IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| In the Matter of the Search of Information Associated with w***********1@gmail.com That is Stored at Premises Controlled by Google, Inc., <br><br> In the Matter of the Search of A Wireless Telephone Assigned Telephone Number (615) ***-****, Believed to Be Used by William Andrew Ogles, <br><br> U.S. Representative William Andrew Ogles, in both his official capacity as a Member of the U.S. House of Representatives, and his individual capacity, <br><br>     Movant. | Case No. 24-mj-4250, 24-mj-4276 <br><br> Magistrate Judge Alistair Newbern <br><br><br><br> **EVIDENTIARY HEARING REQUESTED** |

### REPLY IN SUPPORT OF EMERGENCY MOTION
### FOR RETURN OF PROPERTY

The Executive Branch claims the Speech or Debate Clause places "[no] restrictions" on its review of legislative materials collected during a criminal investigation. Exec. Br. at 2, 24. It posits two arguments: (1) the Clause only protects "non-confidential activities" and was not intended to further the "confidentiality" of Members carrying out the legislative function, Exec. Br. at 8-10; and (2) the Clause's "testimonial privilege" against "be[ing] questioned" does not extend beyond oral questions and written discovery demands, Exec. Br. at 11-16.

Neither argument withstands scrutiny. But, more importantly, the Executive's arguments fail to account for the unique protections afforded to each branch by the Constitution's separation of powers. Because this Court must "resolve" the "competing interests" of the two branches "in a manner that preserves the essential functions of each branch," *United States v. Nixon*, 418 U.S.

1

683, 707 (1974), it is important to identify those interests and functions. Here, the Congressional interest is protection from "threat[s] to [its] legislative independence." *Gravel v. United States*, 408 U.S. 606, 621 (1972). The Executive interest is much more limited: it seeks to covertly investigate Members without constraint. Exec. Br. at 18-24. The balance of these interests tilts heavily in favor of the non-disclosure privilege.

1.

To claim otherwise, the Executive ignores the "plain" importance of "confidentiality" in the context of legislating. *Cf. Nixon*, 418 U.S. at 705. As the Supreme Court noted fifty years ago, "[t]here is nothing novel about governmental confidentiality. The meetings of the Constitutional Convention in 1787 were conducted in complete privacy." *Id.* at 706 n.15. But, in the Executive's telling, the Clause does nothing to protect legislative acts "conducted under a cloak of secrecy" because it was "not designed to encourage confidences." Exec. Br. at 10. And yet, those confidences are exactly what the Supreme Court protected in *Gravel* when it read the Clause to prohibit questions that would "expos[e Congressional] deliberations to executive influence." 408 U.S. at 625. That is why it is impossible to square *Gravel* with the Executive's claim here that the Clause only protects "public, non-confidential activities." Exec. Br. at 10. By its express terms, *Gravel* interpreted the Clause to extend protection to "the deliberative and communicative processes by which Members participate in committee and House proceedings." 408 U.S. at 625. One would have to be "blind" not to see what is obvious, *Trump v. Mazars USA, LLP*, 591 U.S. 848, 867 (2020), which is that such deliberations regularly occur in private.

Even the Executive admits that it cannot seek these communications (or other evidence of legislative acts) through testimony or subpoena, as those investigative methods raise the specter of "hostile questioning." Exec. Br. at 10. But it does not say why "hostile questioning" matters.

Surely it is not merely, as the Executive argues elsewhere, because it places a burden on a Member's time and attention. *Cf.* Exec. Br. at 12-16. Rather, such "question[ing]" is impermissible because it impairs legislative deliberations by exposing them to the Executive. *Gravel*, 408 U.S. at 625. The constitutional danger arises not from some mundane administrative burden but rather from the way the Executive might use the information it gathers. *Id.* On this point, the Executive looks the other way, speaking only of the "non-legislative materials" it seeks and ignoring the danger inherent in its collection of legislative materials without restraint. *See, e.g.*, Exec. Br. at 13.

The Supreme Court has never recognized a privilege that is so easily capable of evasion. When it creates privileges "established in the Constitution, by statute, or at common law," those "privileges" protect "against forced *disclosure*." *Nixon*, 418 U.S. 683 (emphasis added). If the Clause's testimonial privilege were to allow compelled disclosure through other means, it would be uniquely impotent. *See e.g., Trump v. Mazars USA, LLP*, 39 F.4th 774, 808 (D.C. Cir. 2022) (explaining that Executive privilege protects against "disclosure"); *Reed v. Baxter*, 134 F.3d 351, 357 (6th Cir. 1998) (same for attorney-client privilege); *Frohn v. Globe Life & Accident Ins. Co.*, 99 F.4th 882, 889 (6th Cir. 2024) (same for physician-patient privilege); *United States v. Griffin*, 440 F.3d 1138, 1143-44 (9th Cir. 2006) (same for marital communications).

The Executive does not explain why it would be logical for the Court to create some newly minted category of semi-protective privilege; it simply argues that the text of the Clause demands it. But "[t]he Constitution does not tolerate such ready evasion; it 'deals with substance, not shadows.'" *Mazars*, 591 U.S. at 868 (cleaned up). It makes no sense for the Clause to reach subpoenas but not compelled searches, which are typically far more invasive, intimidating, and capable of "impermissibly exposing [Congressional] deliberations to executive influence," *Gravel*, 408 U.S. at 625, than subpoenas or grand jury testimony. As the Executive sees it, so long

3

as its investigation does not *target* legislative activity, the Clause poses no bar to it conducting even the most invasive surveillance of Members—be it covert searches of Members' offices or, by extension, eavesdropping of the cloakrooms off the House and Senate floors. But the work of Congress could hardly be "performed independently," *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 502 (1975), if the Executive were allowed to surveil Members and gather legislative material as if those materials have no constitutional protection. They do, and that protection includes a bar on their disclosure to the Executive.

2.

This is not to say that the Executive has no interest in investigating alleged crimes that might be committed by Members. It does. But the question before this Court is whether the Clause protects legislative materials from *disclosure* to the Executive. And the Executive has no legitimate interest that would justify *that* because such materials cannot further the "quintessential[] 'executive' function" of prosecuting federal crimes. Exec. Br. at 19. This should be obvious: legislative materials cannot serve as the basis for a criminal charge or be used as evidence in any case. *See id*. at 16. So, either (1) the Executive wants to review legislative materials because it seeks exactly the leverage over Congress that the Clause prohibits, or (2) it wants to investigate Members without the "wholly impractical burdens" it claims the non-disclosure privilege places on criminal investigations of Members. *Id.* at 22. The first motivation deserves no further discussion, and the second presents a far narrower interest than the Executive suggests.

Consider its allegations: The non-disclosure privilege would (1) make Members' electronic devices "a sanctuary for crime," Exec. Br. at 18; (2) "immunize members of Congress from [all] criminal liability," *id*. at 20; (3) "risk [the] destruction of evidence," *id.* at 19; (4) cause "significant delays," *id*. at 22-23; and (5) "prevent any covert investigation" of Members and their

4

staff, such as the use of wiretaps and secret email searches, *id*. at 21. The first four claims can be swiftly dispatched. Nothing about the non-disclosure privilege prevents the Executive from seizing such devices, collecting legitimate evidence from them, and charging Members with crimes unrelated to their legislative acts. Nor does the *Rayburn* protocol "risk [the] destruction of evidence" or leave the subject of the search alone to decide what the Executive receives. Federal courts are more than capable of preventing evidence from being destroyed and ensuring that only privileged materials are removed. So, too, can those courts set and enforce swift schedules to ensure that any disputes over what is privileged are resolved within a timeframe that allows legitimate prosecutions to proceed.

This leaves covert investigations as the only Executive interest at stake. And there are three important points to make about it. *First*, the claimed dangers are again either illusory or overblown. Take wiretaps. It is unclear why *this* non-disclosure privilege would deter prosecutors from using wiretaps when they routinely accommodate *other* similar privileges through standard minimization procedures.[1] *Second*, the Executive ignores the options available to avoid the privilege problem, such as first directing covert searches at non-Members. It is hardly an imposition for the Clause to encourage the Executive to pursue investigative methods that are less likely to capture legislative materials before, as here, jumping to the method *most likely* to do so. *Third*, it is the very nature of privileges to hinder fact-finding. *See Nixon*, 418 U.S. at 710. But the Founders chose to establish a privilege, and impose those costs, rather than "leave the preservation of our system of separated powers up to the good faith of prosecutors." *Trump v. United States*, 144 S. Ct. 2312, 2346 (2024). That constitutionally mandated choice should prevail.

---

[1] Nor is there any chance after *Davis v. United States*, 564 U.S. 229 (2011), that the Executive could lose "an important public corruption case" due to "a search that would have previously been considered uncontroversial." Exec. Br. at 22 n.4.

3.

The Executive raises two other arguments. It claims that Congressman Ogles cannot "explain why . . . the Judiciary [can] review" legislative materials "where the Executive could not." Exec. Br. at 19. But the answer is as old as *Marbury*: it is the Judiciary which is responsible for "deciding whether a matter," such as a privilege, "has in any measure been committed by the Constitution to another branch of government." *Baker v. Carr*, 369 U.S. 186, 211 (1962). And it is difficult to believe that the Congressional interest in confidentiality "will be significantly diminished by production of [legislative] material for *in camera* inspection with all the protection that a district court will be obliged to provide." *Nixon*, 418 U.S. at 706. Finally, the Executive asks to review materials dated before Congressman Ogles became a Member. But his communications with other Members about legislative acts (such as the Speaker election) began at least when he was elected—not when he was sworn in. Because the Executive seized materials past that time, its officers would have to access *all* the data to segregate and determine what comes from the permissible period—and it is exactly this sort of access that is not permitted by the Clause.

## CONCLUSION

The Court should grant the motion and order Congressman Ogles' legislative materials be returned to him promptly, without review by the Executive.

Date:   September 16, 2024

Respectfully submitted,

LITSON PLLC

*/s/ Alex Little*
J. Alex Little (No. 29858)
Zachary C. Lawson (No. 36092)
John R. Glover (No. 37772)
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co | zack@litson.co | jr@litson.co

RAYBIN & WEISSMAN, P.C.

*/s/ David Raybin*
David Louis Raybin (No. 3385)
424 Church Street, Suite 2120
Nashville, Tennessee 37219
Telephone: (615) 256-6666 Ext. 220
draybin@NashvilleTnLaw.com

E&W LAW, LLC

*/s/ John S. Irving*
John S. Irving*
1455 Pennsylvania Avenue, N.W., Suite 400
Washington, D.C. 20004
Telephone: (301) 807-5670
john.irving@earthandwatergroup.com
    **Pro hac vice motion pending*

SECIL LAW PLLC

*/s/ John P. Rowley III*
John P. Rowley III*
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
Telephone: (202) 642-0679
jrowley@secillaw.com
    **Pro hac vice motion pending*

*Counsel for Congressman Andy Ogles*

7

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of September 2024, a true and correct copy of the foregoing has been served via the Court's CM/ECF system upon all counsel of record.

*/s/ Alex Little*

8

Case 3:24-mj-04276   Document 13   Filed 09/16/24   Page 8 of 8 PageID #: 169