**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE**

|  |  |
|---|---|
| IN THE MATTER OF SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT W***********1@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC<br><br>IN THE MATTER OF SEARCH OF A WIRELESS TELEPHONE ASSIGNED TELEPHONE NUMBER (615) ***-**** BELIEVED TO BE USED BY WILLIAM ANDREW OGLES | Case Nos. 3:24-mj-04250<br>3:24-mj-04276 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
SCRIPPS MEDIA, INC. TO INTERVENE AND UNSEAL JUDICIAL RECORDS**

Two years ago, this Court issued two warrants authorizing the search and seizure of the personal cell phone and personal email account of U.S. House of Representative Andy Ogles. Search Warrant Issued, Dkt. No. 1, *Search of Wireless Telephone*, Case No. 3:24-mj-04276 (M.D. Tenn. July 30, 2024); Search Warrant Issued, Dkt. No. 1, *Search of Information Associated with Google Account*, Case No. 3:24-mj-04250 (M.D. Tenn. Jul. 12, 2024). Although litigation concerning those warrants has now concluded—with no criminal charges having been filed in connection with them—the warrants and the applications submitted by the United States (the "Government") supporting their issuance remain sealed.

Scripps Media, Inc. ("Scripps"), which owns and operates WTVF NewsChannel5 in Nashville, Tennessee, now respectfully moves to intervene and unseal the warrants and their associated filings. Specifically, Scripps respectfully requests that this Court enter an order unsealing the following records:

(1)    The filings docketed at Doc. No. 1 in the matter of *Search of Wireless Telephone*, 3:24-mj-04276 (M.D. Tenn. 2024), including the warrant, the Government's application, any attachments, and other associated filings; and

(2)    The filings docketed at Doc. No. 1 in the matter of *Search of Information Associated with Google Account*, No. 3:24-mj-04250 (M.D. Tenn. 2024), including the warrant, the Government's application, any attachments, and other associated filings.

(collectively, the "Warrant Materials").

It is well settled in this jurisdiction that there is a "strong common law presumption in favor of public access to court proceedings and records," *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589, 594 (6th Cir. 2016), including judicial records filed in connection with search warrant proceedings like warrants, affidavits, returns, and inventories, *In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012) (recognizing that "the common law right of access to judicial documents may in some situations permit access to search warrant proceedings"). Even in a run-of-the-mill case, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Rudd Equip. Co.*, 834 F.3d at 593. And in this proceeding—in which federal investigators sought and obtained warrants that authorized the seizure of the personal cell phone and email account of a sitting U.S. Congressman seeking evidence of campaign finance violations[1]—the public's interest in accessing the materials underlying those warrants is a powerful one, which necessitates that the Warrant Materials be made public.

### FACTUAL BACKGROUND

Shortly after U.S. Congressman William Andrew ("Andy") Ogles was sworn into the House of Representatives in 2023 to represent Tennessee's Fifth Congressional District, the

---

[1]  Gov. Opp., Dkt. No. 10 at 4–5, *Search of Wireless Telephone* (3:24-mj-04276); Gov. Opp., Dkt. No. 12 at 4–5, *Search of Information Associated with Google Account* (3:24-mj-04250).

propriety of Representative Ogles's campaign finance disclosures became the subject of widespread news coverage and public interest. *E.g.*, Phil Williams, *He doesn't report having checking or savings. So where did Andy Ogles get $320,000 for his campaign?*, NewsChannel5 (originally published Nov. 29, 2023), https://perma.cc/ZVT8-UEDT; Sam Stockard & Adam Friedman, *Federal election officials threaten Ogles with campaign finance audit or enforcement – again*, Tenn. Lookout (Sept. 6, 2023), https://perma.cc/4LMU-PAL2; Marianna Bacallao, *Watchdog group asks Congress to investigate Tennessee U.S. Rep. Andy Ogles, flagging $1M discrepancy in financial disclosures*, WPLN (Jan. 9, 2024), https://perma.cc/VN67-62DF. A federal investigation into these disclosures ensued, and on July 12, 2024, this Court "approved a warrant to seize and search information associated with a Google account registered to" Representative Ogles in the matter docketed at 3:24-mj-04250 (hereinafter, the "Email Warrant"). Gov. Opp., Dkt. No. 10 at 2 (3:24-mj-04276) ("Gov. Opp.").[2] The Email Warrant was "directed to Google LLC." *Id.* By the Government's telling, the Court "placed the warrant and associated materials under seal and ordered Google not to disclose the existence of the warrant to [Representative] Ogles or any other person based on a finding that there was reason to believe notification would seriously jeopardize the investigation." *Id.* at 2–3. Shortly thereafter, "Google provided information subject to the warrant" to the Federal Bureau of Investigation ("FBI"), unbeknownst to Representative Ogles. *Id*. at 3.

Separately, on July 30, 2024, the Court approved a warrant in the matter docketed at 3:24-mj-04276, authorizing the government "to seize and search Ogle's personal cell phone" (hereinafter, the "Cell Phone Warrant"). *Id.* at 3. The Cell Phone Warrant "indicated that the

---

[2]  Many of the parties' filings in these matters were filed on each docket. The Government's Opposition was also filed in *Search of Information Associated with Google Account*, Case No. 3:24-mj-04250, at Dkt. No. 12.

government was seeking evidence related to campaign finance violations." *Id.* at 4. On August 2, 2024, federal agents seized Representative Ogles's cell phone pursuant to the warrant. *Id.* at 3. Because a search and seizure directed at a sitting congressional representative is an exceptional and unusual measure, the execution of the warrant drew widespread media coverage and public interest. *E.g.*, Phil Williams, *FBI agents execute search warrant on Tennessee Congressman Andy Ogles, NewsChannel 5 confirms*, NewsChannel5 (originally published Aug. 6, 2024), https://perma.cc/UZY4-A8Q9; Jonathan Mattise & Kimberlee Kruesi, *GOP Rep. Andy Ogles of Tennessee says FBI took his cellphone in campaign finance probe*, Associated Press (Aug. 6, 2024), https://perma.cc/2WJE-VUUQ. Representative Ogles publicly confirmed that his cell phone had been seized, posting on the social media platform X that it was his understanding that federal agents were investigating issues related to whether his "campaign made mistakes in our initial financial filings." Congressman Andy Ogles (@AndyOgles), X (Aug. 6, 2024), https://perma.cc/SSJ7-JAJJ.

After the Government executed the Cell Phone Warrant, it moved for authorization to disclose the existence of the Email Warrant to Representative Ogles. Mot. to Auth. Disclosure of Sealed Search Warrant, Dkt. No. 2 (3:24-mj-04250). It did not seek authorization to make the Email Warrant available to the broader public. This Court then authorized the government to disclose the Email Warrant and its attachments to Representative Ogles. Order, Dkt. No. 3 (3:24-mj-04250). The matter remained sealed vis-à-vis the public until September 3, 2024, when Representative Ogles publicly filed a Motion for Return of Property, Dkt. No. 2 (3:24-mj-04276)

("Mot. Return Prop."),[3] in this Court, thereby publicly identifying the existence of both the Cell Phone and Email Warrants. *Id.* at 7 ¶¶ 17–18.

The next day, this Court ordered the dockets related to both warrants unsealed but kept the "warrant[s] and all attachments" filed at Dkt. No. 1 in each respective matter sealed. Order, Dkt. No. 4, *Search of Wireless Telephone*, 3:24-mj-04276 (M.D. Tenn. Sept. 4, 2024); Order, Dkt. No. 6, *Search of Information Associated with Google Account*, No. 3:24-mj-04250 (M.D. Tenn. Sept. 4, 2024).

In moving for return of his property, Representative Ogles raised substantial questions about the constitutional separation of powers, arguing that his phone and email account contained "large quantities of legislative material protected from disclosure under the Speech or Debate clause" that consequently could not be rifled through by executive officials. Mot. Return Prop. at 11. Representative Ogles also argued that the government's investigation was improperly politically motivated. *Id.* at 20 (noting that "only days before the Executive sought the search warrants, Congressman Ogles introduced articles of impeachment against Vice President Kamala Harris").

The Government, for its part, responded that its investigation was "unrelated to legislative acts," Gov. Opp. at 8, relying in part on limitations included in "Section II of Attachment B for each warrant," which, according to the Government, "describes the information to be seized, and neither warrant indicates that the government seeks to seize evidence related to Ogles's legislative acts," *id.* at 6. In response to Representative Ogles's accusations of political bias, the Government

---

[3] Also filed in *Search of Information Associated with Google Account*, Case No. 3:24-mj-04250, at Dkt. No. 4.

insisted that "a warrant cannot issue except on a showing of probable cause to a neutral and detached judicial officer that a particular device contains evidence of a crime." *Id.*

On October 7, 2024, the Government represented it would not review the contents of Representative Ogles's cell phone or email account pending a decision by this Court. Joint Statement of Facts, Dkt. No. 17-1 at 3 ¶ 11 (3:24-mj-04276).[4] The matter remained pending in this Court until May 5, 2026, when Representative Ogles withdrew his motion for return of property and represented to this Court that "the Government has advised defense counsel that it will promptly return or destroy the property and information obtained pursuant to the respective search warrants at issue." Notice of Withdrawal of Pending Emergency Motions, Dkt. No. 24 at 1 (3:24-mj-04276).[5] Shortly thereafter, Representative Ogles announced at a press conference with other lawmakers that "this DOJ has cleared me." *Rep. Andy Ogles News Conference on Justice Department Surveillance*, at 3:27–3:30, CSPAN (May 13, 2026), https://bit.ly/45nV3s4. At the same press conference, Representative Ogles reiterated his belief that the investigation was improperly motivated by political bias, stating the "Biden Administration was willing to intentionally violate [the Speech and Debate Clause] to punish its adversaries, to target conservatives, specifically to target Republicans." *Id.* at 1:57–2:16.

Meanwhile, on January 2, 2025, the Office of Congressional Ethics ("OCE") referred Representative Ogles to the House Ethics Committee on allegations that he "omitted or misrepresented required information in his financial disclosure statements or FEC candidate committee reports." Off. Cong. Conduct, *OCE Referral Regarding Rep. Andy Ogles* (Jan. 2,

---

[4] Also filed in *Search of Information Associated with Google Account*, Case No. 3:24-mj-04250, at Dkt. No. 18-1.

[5] Also filed in *Search of Information Associated with Google Account*, Case No. 3:24-mj-04250, at Dkt. No. 25.

2025), https://perma.cc/V653-YC97. The same day, OCE published a report detailing its investigation and findings, Off. Cong. Ethics, H.R., Report, Rev. No. 24-3057 (adopted June 20, 2024), https://perma.cc/U6MR-Q36F ("OCE Report"), along with its accompanying exhibits, https://perma.cc/B7EF-KS4Q ("OCE Exhibits"). The OCE Report indicated that in Representative Ogles's campaign's July 2022 Quarterly Report, "the campaign reported receiving a $320,000 loan from Rep. Ogles's personal funds on April 15, 2022." OCE Report at 7. But following OCE's review, Representative Ogles's campaign committee "amended its FEC reports, correcting the amount of the loan and the campaign's cash on hand over time" to reflect that "the loan made by Representative Ogles to the campaign was not in the amount of $320,000, but rather $20,000." *Id.* at 8–9. The Report indicated the individuals from whom OCE had sought documentary and testimonial information, *id*. at 4–5, and revealed that OCE had conducted interviews with two of Representative Ogles's campaign treasurers who were referred to as "Witness 1" and "Witness 2" in its Report. *Id.* at 9–10. The OCE Exhibits included transcripts of the interviews with these individuals. OCE Exhibits at 5–58 (transcript of Witness 1 interview) & 62–115 (transcript of Witness 2 interview).

**ARGUMENT**

**I.     The Court should grant Scripps' request to intervene to advocate for transparency regarding the Search Warrant Materials.**

As the Sixth Circuit has recognized, media organizations have standing to intervene where the "denial of documents adversely affect[s] their ability to report" on matters of public concern. *Grae v. Corr. Corp. of Am.*, 57 F.4th 567, 571 (6th Cir. 2023). Thus, to enforce the common law right of access, "media organizations may move to intervene for the purpose of contesting closure of hearings and the sealing of documents." *Application of Storer Commc'ns, Inc.*, 828 F.2d 330, 335 (6th Cir. 1987). In accordance with this procedure, district courts in this Circuit have allowed

members of the media to intervene to seek access to judicial records submitted in connection with warrant proceedings. *In re Search Warrant*, No. M-3-94-80, 1996 WL 1609166, at *1 (S.D. Ohio Aug. 20, 1996) (granting in part motion to intervene and unseal warrant materials by media organizations following termination of criminal investigation).

Here, Scripps owns and operates NewsChannel5 in Nashville, Tennessee, which has reported on Representative Ogles's 2022 campaign finance disclosures, the Government's investigation into them, and the litigation over the instant warrants. *E.g.*, Williams, *He doesn't report having checking or savings. So where did Andy Ogles get $320,000 for his campaign?*, *supra* at 3; Williams, *FBI agents execute search warrant on Tennessee Congressman Andy Ogles, NewsChannel 5 confirms*, *supra* at 4; Phil Williams, *Career prosecutors withdraw from federal criminal investigation of GOP Congressman Andy Ogles*, NewsChannel5 (Jan. 31, 2025), https://perma.cc/NSV3-B297; Phil Williams, *Trump DOJ agrees to 'return or destroy' evidence seized from MAGA Congressman Andy Ogles*, NewsChannel5 (originally published May 5, 2026), https://perma.cc/4UBE-MJN2. To date, none of that reporting has included information about the basis for the Government's original conclusion—and this Court's agreement—that probable cause existed to believe seizing property from a sitting U.S. Congressman would reveal evidence of a federal crime at the time the Cell Phone and Email Warrants were issued. Such information is of significant public interest because it would allow the public through NewsChannel5's reporting to better evaluate the parties' claims before this Court about the propriety of the warrants, as well as the allegations of political bias Representative Ogles has raised in in his public statements concerning this matter. This Court should accordingly allow Scripps to intervene to seek the unsealing of the Warrant Materials.

**II.    The common law creates a presumption of access to judicial records related to the search of Representative Ogles's phone and email account.**

The common law affords the public a qualified "right to inspect and copy public records and documents, including judicial records and documents." *United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986) (citing *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978)). The common law right of access is qualified because it creates a "a presumption in favor of access," *id*., which may be abridged "if, in the exercise of the court's sound discretion, [the court] determines that non-disclosure is warranted." *United States v. Dejournett*, 817 F.3d 479, 485 (6th Cir. 2016).

Federal courts throughout this country have held that judicial records filed in connection with search warrant proceedings—including warrants, affidavits, returns, and inventories—are subject to the qualified common law right of access. *E.g., Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989) (recognizing "the common law qualified right of access to the warrant papers"); *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017) (extending "the common law qualified right of access to judicial records to situations involving an individual's request to access pre-indictment warrant materials"); *Matter of Search of 1638 E. 2nd St., Tulsa, Okl.*, 993 F.2d 773, 775 (10th Cir. 1993) (agreeing "affidavits for search warrants are judicial records" subject to common law right of access) (internal quotations omitted); *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 297 (D.C. Cir. 2022) (recognizing common law right of access applies to "search warrant materials"); *see also United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011) (common law right of access only attaches "after an investigation has ended"). The Sixth Circuit, for its part, has recognized that "the common law right of access to judicial documents may in some situations permit access to search warrant

proceedings," where "the public's right to know outweighs interests of privacy in sealing a particular document." *Search of Fair Fin.*, 692 F.3d at 433.

At least one district court in this Circuit has applied the common law right of access to evaluate a request to unseal warrant materials. *In re Search Warrant*, 1996 WL 1609166, at *1 (applying common law framework to request to access search warrant, application, supporting affidavit, and return). Courts outside this Circuit routinely apply the common law right of access to evaluate requests to access warrant materials, *see, e.g.*, *In re Four Search Warrants*, 945 F. Supp. 1563, 1567 (N.D. Ga. 1996) (concluding warrant affidavits filed in connection with investigation into bombing could be partially unsealed), including in several recent cases involving requests for warrant materials from searches and seizures involving members of the legislative branch, *see, e.g.*, *In re PennLive*, No. CV 1:22-MC-00756, 2024 WL 1619278, at *5 (M.D. Pa. Apr. 15, 2024) (concluding warrant materials filed in connection with investigation into U.S. House of Representative Scott Perry could be partially unsealed); *In re L.A. Times Commc'ns LLC*, 628 F. Supp. 3d 55, 69–70 (D.D.C. 2022) (concluding warrant materials filed in connection with investigation into U.S. Senator Richard Burr could be partially unsealed).

**III.    The public has a powerful interest in accessing the judicial records related to the search of Representative Ogles's phone and email account.**

The Warrant Materials at issue here should be unsealed because "the public's right to know outweighs interests of privacy in sealing" them. *Search of Fair Fin.*, 692 F.3d at 433. To start, because the Fourth Amendment protects against unreasonable searches and seizures and requires probable cause before a warrant may issue, U.S. Const. amend. IV, "a court's determination that a person's property may be seized involves the adjudication of that person's substantive rights." *United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, Ca., in Acct. No. 7986104185*, 643 F. Supp. 2d 577, 584 (S.D.N.Y. 2009). And applications and affidavits

submitted by law enforcement in support of such warrants "contain the information forming the basis for the probable cause determinations that were prerequisites for the issuance of the seizure warrants." *Id.* Accordingly, even in cases involving private individuals, access to warrant application materials "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Bus. of Custer Battlefield Museum & Store*, 658 F.3d at 1194; *see also In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988) ("[P]ublic access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct.").

In this case, the need for transparency is particularly pronounced, because the warrants at issue authorized the seizure of property and information from a public official and member of the legislative branch. Such searches implicate sensitive separation of powers issues between the executive and legislative branches, *see, e.g.*, *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 661 (D.C. Cir. 2007) (discussing implications of "the disclosure of legislative materials to agents of the Executive"), which Representative Ogles argued in these very proceedings necessitated relief from this Court following the execution of the warrant. *See* Mot. Return. Prop. a 3. Moreover, in the adjudication of those issues, the Government itself sought to rely on the Warrant Materials themselves to influence this Court's adjudication of the issues surrounding Representative Ogles's Motion for Return, when it represented to this Court that Section II of Attachment B for each warrant appropriately cabined the information to be seized to avoid "evidence related to Ogles's legislative acts." Gov. Opp. at 6. That a litigant in these proceedings sought to rely on the sealed warrant materials in an effort to "inform the court's ultimate

disposition" of a request for judicial relief further bolsters the need for access. *Cf. United States v. Campbell*, No. 1:19-CR-25, 2021 WL 1975319, at *3 (S.D. Ohio May 18, 2021) (explaining that where warrant affidavit was submitted as attachment to motion to suppress, it became part of the "adjudication stage" and was thus subject not just to the common law right of access but to a right of access arising under the First Amendment).

Moreover, "when the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance" toward allowing access to judicial records. *Beckham*, 789 F.2d at 413. The public therefore has a powerful interest in evaluating the basis for the Government's conclusion—and this Court's—that probable cause existed to believe seizing property from a sitting U.S. Congressman would reveal evidence of a federal crime. *Cf. In re L.A. Times*, 28 F.4th at 298 (D.C. Cir. 2022) (recognizing "powerful public interest in learning of a sitting Senator's potential violation of" federal laws).

The public has an equally strong interest in evaluating potential misconduct by federal law enforcement. *Cf. Application of Nat'l Broad. Co., Inc.*, 635 F.2d 945, 952 (2d Cir. 1980) ("The presumption is especially strong in a case like this where the evidence shows the actions of public officials, both the defendants and law enforcement personnel."). Here, Representative Ogles has repeatedly called into question the executive branch's motivations and justifications for the search, both before this Court and in public statements and press conferences. *See* Mot. Return Prop. at 20; *Rep. Andy Ogles News Conference on Justice Department Surveillance*, CSPAN, *supra*, at 1:57–2:16. Ultimately, though, nothing in the public's right of access turns on whether the records at issue here would demonstrate misconduct by Representative Ogles on the one hand or federal investigators on the other. Whether the Government's justifications for the search was flimsy or ironclad, "the public is entitled to assess for itself the merits of judicial decisions," and thereby has

12

an interest in "ascertaining what evidence and records" this Court relied on in reaching its decision to issue the warrants at issue here. *Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016).

**IV.** **The public's presumptive right of access can be overcome only by a compelling showing that neither the Government nor Representative Ogles can make in this case.**

Where a litigant seeks to shield court records from public view, "the burden rests on the party opposing disclosure to show compelling reasons that justify confidentiality." *Morning Song Bird Food Litig.*, 831 F.3d at 772. Upon a motion to unseal, the party seeking continued sealing bears the burden of justifying continued confidentiality. *In re Black Diamond Mining Co., LLC*, No. 15-96-ART, 2016 WL 4433356, at *2 (E.D. Ky. Aug. 18, 2016) ("The party seeking to seal court documents—or, here, to keep them sealed—bears the burden of overcoming the strong presumption against doing so."); *see also United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) ("[T]he party seeking to keep records sealed bears the burden of justifying that secrecy, even where, as here, the district court already previously determined that those documents should be sealed."). On either footing, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 476 (6th Cir. 1983). No such compelling reasons for continued sealing could conceivably apply here.

While Movant does not have access to the Government's motion to initially seal the Warrant Materials—or, for that matter, this Court's basis for sealing them—the Government has represented that this Court placed the Email Warrant under seal prior to its execution "based on a finding that there was reason to believe notification would seriously jeopardize the investigation." Gov. Opp. at 2–3. To the extent the Government was previously concerned that Representative Ogles or other subjects might have discovered the investigation, there can be no dispute that the existence of the warrants is now a matter of public record by virtue of the filings in these cases and

13

Representative Ogles's own media appearances, as the Government itself has conceded. *See id.* at 21 (noting fact that Representative Ogles "filed his motions on the public docket" and "gave an interview highlighting the existence of the previously sealed warrant"). And in any event, the Government cannot plausibly show *now* that public access to the Warrant Materials would jeopardize its investigation, where it has not only declined to prosecute anyone in connection with these warrants, but returned all of the seized materials to a subject of the investigation without reviewing them. *See Bus. of Custer Battlefield Museum & Store*, 658 F.3d at 1194 (noting that once an investigation has terminated, including by declining to prosecute, risks of subjects and other persons destroying evidence or otherwise jeopardizing investigation are "not as relevant").

On this point, it bears underscoring that the public already has access to much of the information contained in the records at issue here. *See In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (noting prior access is a relevant factor in the common law analysis, citing *Nixon*, 435 U.S. at 597–608). The public filings already available on the dockets in the warrant matters have not only acknowledged the existence of both warrants but have confirmed that the warrants sought "evidence related to campaign finance violations," and that "Ogles was best categorized as a subject, meaning he was a person whose conduct was within the scope of the government's investigation." Gov. Opp. at 4–5. And the OCE Report provided the public with substantial information about the nature of Representative Ogles's alleged campaign finance violations, along with substantial information about the individuals with knowledge of those alleged violations and the facts about which those individuals have knowledge. OCE Report at 4–5 (describing individuals from whom OCE sought information) & 9–10 (describing Witnesses 1 & 2); *see also* OCE Exhibits at 5–58 (transcript of Witness 1 interview) & 62–115 (transcript of Witness 2 interview). Thus, even if the Government's investigation into Representative Ogles had not been

14

terminated with the return of his property, the fact that a coordinate branch has already released extensive details about its own investigation to the public diminishes any risk that release of the Warrant Materials might "reveal the government's preliminary theory of the crime being investigated and enable criminal suspects to figure out which other places are likely to be searched as the investigation continues." *Search of Fair Fin.*, 692 F.3d at 432.

Any privacy interest that Representative Ogles himself might have enjoyed has also been substantially diminished. As the D.C. Circuit has acknowledged in a similar case involving access to warrant materials from an investigation into a U.S. Senator, privacy interests are diminished where an "investigation involved actions taken by a public official in his public capacity," and particularly where the investigation has been the subject of "extensive media reporting," and the subject has themselves acknowledged the investigation. *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 298 (D.C. Cir. 2022). Such is the case here, where this investigation concerned a public official's campaign finance disclosures and was the subject of widespread press coverage. *See supra* at 4 (collecting coverage). And Ogles himself has acknowledged the investigation several times over. Congressman Andy Ogles (@AndyOgles), X, *supra* at 4; *Rep. Andy Ogles News Conference on Justice Department Surveillance*, CSPAN, *supra* at 6.

To the extent residual secrecy interests exist, only redaction—not wholesale sealing— could possibly be warranted on these facts. The analysis of whether a judicial record may be sealed proceeds "on a document-by-document, line-by-line basis." *Shane Grp.*, 825 F.3d at 308. Thus, even if any party could prove the existence of a compelling interest that would overcome the presumption of access and the overriding public interest here to sufficiently support continued sealing of any portion of the Warrant Materials, this Court should order such party to propose

narrow redactions with reference to why "that specific information in the court record meets the demanding requirements for a seal." *Id.*

## CONCLUSION

For the foregoing reasons, Scripps respectfully asks this Court grant its Motion to Intervene and Unseal Judicial Records and enter an order unsealing the Warrant Materials, subject only—to the extent necessary—to any tailored redactions the parties may propose that are demonstratively required by countervailing interests.

DATED: August 13, 2026

Respectfully submitted,

*/s/ Paul R. McAdoo*
Paul R. McAdoo (BPR No. 034066)
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS
6688 Nolensville Rd., Suite 108-20
Brentwood, TN 37027
Phone: 615.823.3633
Facsimile: 202.795.9310

*Counsel for Scripps Media, Inc.*

16

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on August 13, 2026, the foregoing Motion of Scripps Media, Inc. to Intervene and Unseal Judicial Records was served upon counsel for the United States and U.S. Representative William Andrew Ogles through the CM/ECF system and via email at the following email addresses:

John P. Taddei
U.S. Department of Justice
950 Pennsylvania Ave NW,
Suite 1716
Washington, DC 20530
john.taddei@usdoj.gov

*Counsel for the United States*

J. Alex Little
Zachary C. Lawson
John R. Glover
Litson PLLC 54 Music Square East,
Suite 300
Nashville, TN 37203
alex@litson.co
zack@litson.co
jr@litson.co

David Louis Raybin
Raybin & Wessman, P.C.
424 Church Street,
Suite 2120
Nashville, Tennessee 37219
draybin@NashvilleTnLaw.com

John S. Irving, IV
John P. Rowley III
Secil Law PLLC
1701 Pennsylvania Ave., N.W.,
Suite 200
Washington, D.C. 20006
jirving@SECILlaw.com
jrowley@SECILlaw.com

*Counsel for Congressman Ogles*

DATED: August 13, 2026

*/s/ Paul R. McAdoo*
Paul R. McAdoo (BPR No. 034066)
REPORTERS COMMITTEE FOR
 FREEDOM OF THE PRESS

*Counsel for Scripps Media, Inc.*

17