**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| In the Matter of the Search of Information Associated with w************1@gmail.com That is Stored at Premises Controlled by Google, Inc., | ) | |
| In the Matter of the Search of A Wireless Telephone Assigned Telephone Number (615) ***-****, Believed to Be Used by William Andrew Ogles, | ) | Case Nos. 3:24-mj-04250 and 3:24-mj-04276<br><br>Magistrate Judge Luke A. Evans |
| U.S. Representative William Andrew Ogles, in both his official capacity as a Member of the U.S. House of Representatives, and his individual capacity, | ) | **[FILED IN BOTH CASES]** |
| Movant, | ) | |
| Scripps Media, Inc., | ) | |
| Intervenor. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CONGRESSMAN OGLES'S OBJECTIONS TO, AND MOTION TO SET ASIDE, THE MAGISTRATE JUDGE'S SEPTEMBER 4, 2026 MEMORANDUM ORDER, OR, IN THE ALTERNATIVE, FOR LEAVE TO REVIEW THE SEALED MATERIALS AND PROPOSE REDACTIONS, AND FOR A STAY PENDING REVIEW**

Pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Criminal Procedure 59, and Local Rule 72.02, U.S. Representative William Andrew Ogles objects to the Magistrate Judge's September 4, 2026 Memorandum Order (the "Order"), Dkt. 34, which granted in part the motion of Intervenor Scripps Media, Inc. ("Scripps") to unseal the search warrants, applications, and supporting affidavits in the above-captioned matters.[1] Congressman Ogles asks the Court to set the Order

[1] Unless otherwise indicated, docket citations refer to Case No. 3:24-mj-04250.

aside and deny Scripps's motion. At a minimum, he asks the Court to vacate the Order insofar as it denied his counsel *any* opportunity to review the sealed materials and propose redactions, and to keep the materials sealed while the Court decides these objections and for a period sufficient to seek appellate review of any order authorizing disclosure.

The Order rests on a finding that undercuts it. The Magistrate Judge found that "the incremental gain in knowledge from unsealing will not be large," Order at 8; that the warrant materials "contain little substantive information that is not already publicly known," *id.* at 4; and that, apart from personal information requiring redaction, they "more or less track" a congressional ethics report that has been public since January 2025, *id.* at 5. It did not weigh the harm that publication, under a federal court's imprimatur, of a federal agent's untested accusations would cause to someone the government investigated for nearly two years and then declined to charge.

The sequence matters. At the government's request, a judicial officer issued warrants for Congressman Ogles's personal email account and cell phone in July 2024. The government defended those seizures through two years of litigation, then agreed to return or destroy everything it had taken and closed its investigation without bringing charges. Dkt. 28 at 1, 6. No grand jury has passed on the affidavits' allegations. No court has tested them in an adversarial proceeding. Congressman Ogles has never even seen them. Dkt. 32 at 2, 11–12. Quite the contrary, the affidavits were prepared *ex parte* by agents whose job was to establish probable cause, and they have never been answered because the government chose not to give Congressman Ogles a forum in which to answer them. But the Order treated that choice as a reason *for* disclosure. Order at 9–10. The authorities the Order itself relied on treat it as the opposite: when the government has finished investigating and will seek no indictment, the subject's privacy interest becomes

"overwhelmingly strong," because he would have no "ability to contest the charges in court." *In re Search Warrant*, No. M-3-94-80, 1996 WL 1609166, at *13 (S.D. Ohio Aug. 20, 1996).

Put simply, the common law asks the Court to weigh what the public would gain against what the people named in the records would lose. *United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986). The Order found the gain small and did not weigh the loss at all. In this way, the Magistrate Judge's order erred.

There is more. The Order also refused to let Congressman Ogles's counsel see the affidavits before they are published, on the ground that Ogles "did not cite to [sic] any authority demonstrating that the target of a search warrant may propose redactions." Order at 10. The authority is the Court's own supervisory control over its records. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598–99 (1978). Scripps itself asked that disclosure be subject to redactions "the parties may propose," Dkt. 28 at 16, and its reply assumed Ogles would propose them, Dkt. 33 at 5. The Order instead left redaction entirely to the government—which "has taken no position on unsealing," Order at 9, does not represent Congressman Ogles, and will make its proposals *ex parte*. The one participant with the most at stake, and the only one who can explain how a passing reference identifies an unnamed person or reveals a private fact, is the one participant the Order excluded.

The Court should sustain the objections and deny Scripps's motion; failing that, it should vacate the Order in part and permit counsel to review the sealed materials and propose redactions under seal; and in either event it should keep the materials sealed while these objections are decided and for a period sufficient to seek appellate review.

## BACKGROUND

At the government's request, a judicial officer issued warrants for information in Congressman Ogles's personal Google account on July 12, 2024, and for his personal cell phone on July 30, 2024. Dkt. 28 at 1, 3–4. The government was investigating suspected campaign finance irregularities in connection with Congressman Ogles's 2022 campaign. *Id.* at 2 n.1, 3–4. Federal agents seized the phone on August 2, 2024. *Id.* at 4. The searches drew immediate and extensive press coverage, in significant part because a search directed at a sitting Member of Congress is, as Scripps put it, "an exceptional and unusual measure." *Id.*

On September 3, 2024, Congressman Ogles moved under Federal Rule of Criminal Procedure 41(g) for return of his property, asserting that the Speech or Debate Clause protected legislative materials on his phone and in his email account. Dkt. 28 at 5; Dkt. 32 at 4. The government opposed, arguing in part that neither warrant sought evidence of legislative acts. Dkt. 28 at 5. On October 7, 2024, the government represented that it would not review the seized contents until the Court ruled. *Id.* at 6. It never did rule. On May 5, 2026, Congressman Ogles withdrew his motions after the government agreed to return or destroy the seized property and information, and the government closed its investigation without bringing charges. Dkt. 28 at 6; Dkt. 32 at 4–5; Order at 1. The warrants and applications have remained under seal throughout.

The public record already contains a report and exhibits that the Office of Congressional Conduct ("OCC"), formerly the Office of Congressional Ethics, transmitted to the House Ethics Committee concerning Congressman Ogles's campaign finances. Dkt. 28 at 2–5. On August 13, 2026, Scripps moved to intervene and to unseal the warrants, applications, attachments, and associated filings at Dkt. 1 in each matter. Dkt. 27 at 1–2. It invoked the common law right of access and argued that disclosure would help the public assess Congressman Ogles's conduct and

the government's reasons for searching a Member of Congress. Dkt. 28 at 9–15. The government took no position on disclosure but indicated to Scripps that it might seek redactions. Dkt. 27 at 2.

Congressman Ogles opposed disclosure of untested allegations against him and of information identifying uncharged third parties. In the alternative, he asked the Court to review the materials *in camera* and to give his counsel an opportunity to propose redactions. Dkt. 32 at 1 n.1, 8–14. Scripps replied that, if the Court permitted Ogles to propose redactions, it should require a justification for each and give Scripps an opportunity to respond. Dkt. 33 at 5.

The Magistrate Judge reviewed the sealed materials *in camera* and found that, apart from personal information requiring redaction, they "more or less track" the OCC report and exhibits. Order at 4–5. He granted Scripps's motion in part, declined to allow Ogles to propose redactions, and directed the government to submit proposed redactions *ex parte* and under seal by September 25, 2026. *Id.* at 10–11. The materials "will remain sealed as is, pending submission of proposed redactions and further orders of the Court." *Id.* at 11.

## LEGAL STANDARD

### A. The Court Reviews the Order De Novo.

The Order is the only matter at issue. No charge is pending, no defendant exists, and the only matter before the Court is Scripps's request to unseal. An order granting that request resolves the entire proceeding and disposes of every interest Congressman Ogles holds in it. Congress reserved such matters for a district judge. A magistrate judge may "hear and determine" pretrial matters, but not those that dispose of a claim, 28 U.S.C. § 636(b)(1)(A), and the Sixth Circuit has held that the statute's list of dispositive motions "is nonexhaustive" and that "unlisted motions that are functionally equivalent to those listed in § 636(b)(1)(A) are also dispositive." *Vogel v. U.S. Office Prods. Co.*, 258 F.3d 509, 514–15 (6th Cir. 2001). The inquiry is a "functional analysis of the motion's potential effect on litigation." *Id.* at 515. When a matter is dispositive, "a magistrate

judge may issue only proposed findings and recommended dispositions," and the district judge "shall make a de novo determination" of any portion to which a party objects. *Id.* at 515; 28 U.S.C. § 636(b)(1)(B)–(C); Fed. R. Crim. P. 59(b)(3). Courts applying that functional test to a media intervenor's motion to unseal have treated the magistrate judge's ruling as dispositive, because it "has the practical effect of denying [a party] the ultimate relief" sought. *Hall v. County of Fresno*, No. 1:11-cv-2047, 2016 WL 374550, at *4 (E.D. Cal. Feb. 1, 2016); *see Bastidas v. Chappell*, 791 F.3d 1155, 1164 (9th Cir. 2015) (motion is dispositive when ruling "effectively disposes of a claim or defense or precludes the ultimate relief sought"). The Order does exactly that. It should be treated as a report and recommendation, and the Court should decide these objections de novo. Fed. R. Crim. P. 59(b)(3); LR 72.02.

The result is the same even under the more deferential standard. If the Order is treated as nondispositive, the district judge "must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a); *see* 28 U.S.C. § 636(b)(1)(A); LR 72.02. That standard "requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (citation omitted). An order is contrary to law when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* The objections here concern the legal framework the Order applied—which interests the common law requires the Court to weigh, whether a closed investigation strengthens or weakens the subject's privacy interest, and whether the subject of a warrant may be heard on redactions before his accusers' affidavits are published. Those are questions of law and should receive fresh review under either standard.[2]

---

[2] These objections are timely. The Order was entered on September 4, 2026, and these objections are filed within fourteen days of service. Fed. R. Crim. P. 59(a); LR 72.02(a).

### B. The Common Law Right of Access Is Qualified, and It Is at Its Weakest in Search Warrant Proceedings.

The common law presumption favors access to judicial records, but the right "is not absolute." *Nixon*, 435 U.S. at 598. Every court is charged with weighing the interests on both sides, and the Sixth Circuit has identified the considerations that govern: what the material would add to public knowledge, the danger to persons discussed in it, the motives of the party seeking access, and any special circumstances. *Beckham*, 789 F.2d at 409. The privacy interests of participants and of third parties may justify continued sealing, *In re Knoxville News-Sentinel Co.*, 723 F.2d 470, 476–78 (6th Cir. 1983), and a court may tailor access to protect those whom disclosure would harm, *Nixon*, 435 U.S. at 598–99.

Search warrant materials sit at the far edge of the presumption. The Sixth Circuit has rejected any First Amendment right of access to search warrant proceedings, *In re Search of Fair Fin.*, 692 F.3d 424, 429–33 (6th Cir. 2012), and has said only that the common law right "may in some situations permit access to search warrant proceedings," *id.* at 433. Such proceedings are "necessarily *ex parte*." *Id.* at 430 (quoting *Franks v. Delaware*, 438 U.S. 154, 169 (1978)). The affidavits are prepared by one side, for the purpose of persuading a judicial officer of probable cause, and the person they describe has no opportunity to respond before the warrant issues. The Sixth Circuit has recognized that, as a consequence of this process, disclosure of warrant materials can subject "innocent people" who never become defendants to "embarrassment" and censure. *Id.* at 432. The Order nonetheless described the presumption in favor of public access in this very context as "strong." Order at 8. Not so. That characterization comes from the civil-litigation cases, *see Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305–06 (6th Cir. 2016), not from *Fair Finance*, and it is the first place the Order went wrong.

## ARGUMENT

The Order contains three pervasive errors, each of which independently warrants relief. *First*, it did not weigh the reputational harm that publication of untested accusations inflicts on an uncharged person, and it treated the government's decision not to prosecute as a reason for disclosure rather than the reason against it. *Second*, it concluded that redactions would pose "no danger to Ogles or to anyone else," Order at 9, without asking whether unnamed third parties could be identified from context. *Third*, it excluded the one participant who can explain those harms from the redaction process. Each error warrants setting the Order aside or, at a minimum, vacating it in part and permitting counsel to review the materials and propose redactions. And because the Order itself keeps the materials sealed for now, a stay pending the Court's review costs nothing and preserves everything.

### I. THE ORDER FAILED TO WEIGH THE HARM OF PUBLISHING UNTESTED ACCUSATIONS AGAINST A MAN THE GOVERNMENT DECLINED TO CHARGE

The Court should keep the warrant materials sealed because publication would expose Congressman Ogles to accusations he has never been permitted to contest and never will be. The Order called the presumption of access "strong," Order at 8, but it never weighed the reputational harm on the other side of the scale against the "not . . . large" public benefit it identified, *id.* Congressman Ogles's opposition explained why the government's decision not to prosecute strengthened his privacy interest. Dkt. 32 at 8–11. The Order treated that decision as a reason *for* disclosure. Order at 9–10. That inverts the law.

#### A. The Closed Investigation Strengthens, Not Weakens, Congressman Ogles's Privacy Interest.

Courts may withhold or redact warrant materials to protect an ongoing investigation. They may also do so when disclosure would "damage an unindicted target's reputation while leaving no

judicial forum to rehabilitate that reputation." *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017); *see also In re PennLive, York Daily Rec., & York Dispatch to Unseal Ct. Recs.*, No. 1:22-MC-00756, 2023 WL 3318679, at *6 (M.D. Pa. May 9, 2023) (same). The common law balance turns in part on the reliability of the information and on whether the person accused has had any opportunity to answer it. *United States v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995). And the Sixth Circuit has recognized that disclosure of warrant materials can expose people who never become defendants to embarrassment or censure. *Fair Fin.*, 692 F.3d at 432. The government identified no investigation that disclosure would jeopardize. But the end of the investigation did not end the harm posed by the release of unfounded accusations about Congressman Ogles. He now has no forum in which to answer.

The Order's own authority makes the point. It cited *In re Search Warrant*, 1996 WL 1609166, for the proposition that disclosure with redactions may protect previously unidentified third parties. Order at 9. True, but the same decision explains that when the government has completed its investigation and will seek no indictment, "the privacy interest would be overwhelmingly strong," because the subject would have no opportunity to contest the allegations in court. 1996 WL 1609166, at *13. The Order did not mention that passage. It should have. It describes this case.

Warrants authorize searches. They do not establish anyone's guilt. Federal charging policy treats probable cause as "a threshold consideration only" and requires prosecutors to assess whether admissible evidence will eventually support a conviction before charging. Justice Manual §§ 9-27.200 cmt., 9-27.220 & cmt. Here, the government made that assessment and declined. The affidavits were written by agents to obtain a warrant. Congressman Ogles could not test their assertions before the warrants issued, and he has no criminal case in which to obtain discovery,

cross-examine the affiants, or put on evidence of his own. Publishing the agents' account as a judicial record would make untested allegations look like adjudicated facts. That is the injury the Order did not weigh.

### B. The Courts Have Protected Uncharged Persons—Including Public Officials—From Precisely This Harm.

Accusations in a warrant affidavit inflict lasting reputational harm when no forum exists to contest them. In *United States v. Smith*, 776 F.2d 1104 (3d Cir. 1985), the Third Circuit upheld an order sealing a list of unindicted persons who "will not have an opportunity to prove their innocence in a trial." *Id.* at 1113–14. Both the First Amendment and the common law supported access, but the risk of reputational injury justified withholding the names. *Id.* at 1110–13. Public office did not change the result. Even though the sealed list included public officials and employees implicated in alleged corruption in public contracting, the court acknowledged the public's interest and upheld the sealing anyway. *Id.* at 1113–15.

The absence of charges matters independently of whether the alleged conduct was public or private. In *In re WP Co. LLC*, 201 F. Supp. 3d 109 (D.D.C. 2016), the court denied a request for further disclosure of warrant materials. An earlier release had concerned a campaign-finance investigation that produced public indictments and successful prosecutions; the later request concerned investigations that produced no charges. The court treated the absence of a forum to answer the allegations as an injury distinct from the private nature of the conduct. *Id.* at 122–23. This investigation concerned campaign finances, as the earlier *WP Co.* investigation did. But that investigation produced indictments and convictions, whereas this one produced neither. The Order does not explain why redactions would spare Congressman Ogles that harm. *See* Order at 9.

Nor does the prospect of a House proceeding supply a forum. The Order says only that "[i]f the House Ethics Committee chooses to pursue its own investigation then that investigation will

occur publicly."[3] Order at 10. Whether the Committee will proceed, what it will examine, and what opportunity Congressman Ogles would have to challenge federal agents' affidavits in that setting are all unknown. A hypothetical congressional inquiry into campaign disclosures is not a trial on the government's probable-cause allegations.

### C. Congressman Ogles's Public Office and Public Statements Do Not Justify the Additional Harm.

To be sure, Congressman Ogles's office and campaign finances give the public an interest in the investigation. That interest does not, however, justify publishing the affidavits after the investigation closed without charges. The Court must assess what disclosure would add to the information already available and weigh that increment against the harm to the people identified. *Beckham*, 789 F.2d at 409. An official's public statements and existing news coverage bear on that assessment, but they do not resolve it. In *In re L.A. Times Communications LLC*, 28 F.4th 292, 297–99 (D.C. Cir. 2022), the D.C. Circuit remanded for consideration of those circumstances and of possible redactions. It did not direct disclosure merely because the investigation concerned a

[3] The premise is mistaken. An Ethics Committee investigation is hardly "public." Every member and staffer of the Committee is sworn not to "disclose, to any person or entity outside the Committee on Ethics, any information received in the course of [their] service," and no evidence, testimony, or document received in an investigation may be released without a vote of the Committee. Rules of the Committee on Ethics, 119th Cong., Rule 7(a)–(b) (2025). Investigative subcommittees sit in executive session; only a Statement of Alleged Violation and the respondent's answer become public, and only after the investigative phase is complete. *Id.* Rule 7(e). The courts have enforced that confidentiality against the Committee's own members, *Boehner v. McDermott*, 484 F.3d 573, 581 (D.C. Cir. 2007) (en banc) (Committee member "voluntarily accepted a duty of confidentiality" and "had no First Amendment right to disclose" investigative material to the press), and have held that documents in a House committee's investigative files are shielded from compelled disclosure by the Speech or Debate Clause, *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 418–21 (D.C. Cir. 1995); *MINPECO, S.A. v. Conticommodity Servs., Inc.*, 844 F.2d 856, 859–61 (D.C. Cir. 1988). Absent an investigative subcommittee, the Committee must release an OCC referral within 45 days (extendable once), and if a subcommittee *is* empaneled the referral "shall not be made public until the conclusion of the investigative subcommittee process." Committee Rule 17A(b)(1), (f)(1). A House proceeding, if one ever occurs, would thus be neither public nor a forum in which Congressman Ogles could confront federal agents' affidavits.

sitting Senator. Scripps argues that Congressman Ogles diminished his privacy interest by acknowledging the searches and criticizing the investigation. Dkt. 28 at 12, 15; Dkt. 33 at 1–4. Those statements bear on the balance. But they disclosed *nothing* of the affidavits' contents, because Congressman Ogles has never seen the affidavits. Dkt. 32 at 2, 11. An individual cannot waive privacy in accusations he has never been shown.

### D. The Order Found the Public Would Gain "Little" From Unsealing.

The value of public disclosure depends on what the records would reveal. *United States v. Certain Real Prop. Located in Romulus*, 977 F. Supp. 833, 836 (E.D. Mich. 1997) (rejecting newspaper's generalized assertions of a need to know). Here the Order made the findings that decide the question. It found that "[t]he warrants and applications contain little substantive information that is not already publicly known," Order at 4; that they "more or less track" the OCC report and exhibits, *id.* at 5; and that "the incremental gain in knowledge from unsealing will not be large," *id.* at 8. That finding cuts against *Scripps*, but the Magistrate Judge found it cut against *Congressman Ogles*. The public already has the OCC report and its exhibits, the parties' filings in these matters, and the Order's own account of the suspected offenses and the scope of the investigation. *Id.* at 4–5. That record permits substantial public scrutiny of the government's decision to search a Member of Congress.

The one concrete benefit the Order identified was "confirming that the search warrant applications in question did not suggest any investigation wider than what has already been addressed in the OCC report." *Id.* at 9. The Order has already delivered that confirmation. It is on the public docket. Unsealing adds nothing to it except the accusations themselves. Scripps's remaining rationale—that the affidavits would let the public evaluate the parties' competing claims about the propriety of the warrants, Dkt. 28 at 8, 12—asks too much of a one-sided document. An affidavit shows what an agent told a judicial officer. It cannot show whether the agent was right,

and no proceeding will ever test that question now. Indeed, Scripps shows its hand in making this argument: it seeks to invite the public to review the search warrant affidavit and conclude that the investigation of Congressman Ogles should not have been dropped.

Neither the government's curious neutrality nor Scripps's motives fills the gap. The Order noted that "[t]he Government has taken no position on unsealing, and Scripps is not seeking unsealing for any morbid interest or other improper motive." Order at 9. Even if both points are true, neither is a reason to disregard the privacy interest of an uncharged subject. The Department of Justice's own policy directs prosecutors to "remain sensitive to the privacy and reputation interests of uncharged parties" and to avoid unnecessary public reference to their alleged wrongdoing. Justice Manual § 9-27.760. The policy creates no enforceable right, *see id.* § 9-27.150, but it reflects the same concern the common law recognizes. The government's decision to stand aside does not extinguish Congressman Ogles's separate interest in preventing that harm, and Scripps's interest in running a story does not reduce it.

The balance favors continued sealing. Congressman Ogles's office warrants scrutiny, but it does not warrant publishing untested accusations that no court will ever examine, in exchange for an "incremental gain in knowledge" the Order itself found "will not be large." Order at 8. Weighed correctly, the *Beckham* factors require that the warrant materials remain sealed.

## II. THE ORDER DID NOT DETERMINE WHETHER REDACTING NAMES WOULD ACTUALLY PROTECT THE THIRD PARTIES THE AFFIDAVITS DESCRIBE

The Court should also set aside the Order's conclusion that redactions will protect uncharged third parties. In his opposition, Congressman Ogles explained that the warrant affidavits presumably identify people who have never been publicly associated with the federal investigation, hold no public office, and have made no public statements about it. Dkt. 32 at 12. Their privacy

interests must be assessed separately from his. His public role and his criticism of the searches do not diminish their interests by one degree.

The Sixth Circuit has upheld sealing to protect people who did not initiate the litigation. In *Knoxville News-Sentinel*, it protected innocent bank customers with a justifiable expectation of privacy in their financial records. 723 F.2d at 477–78. Here, the people presumably identified in these warrant affidavits have an additional interest: avoiding public association with a criminal investigation that produced no charges. The Order recognized that disclosure can create "mistaken notions concerning who might and might not be cooperating with the government or who may be subjects." Order at 8 (quoting *In re EyeCare Physicians of Am.*, 100 F.3d 514, 519 (7th Cir. 1996)). Scripps answers that campaign employees' and agents' identities are public and that the OCC exhibits include witness interviews. Dkt. 33 at 5. But knowing who worked on a campaign does not reveal whom federal agents suspected of a crime, whom they treated as a source, or what conduct they attributed to each person. An affidavit could disclose those things for the first time. A public ethics interview likewise does not make every allegation about the witness public.

Removing names does not suffice if the narrative identifies the people involved. In *Matter of Search Warrants for National Builders Corp.*, 833 F. Supp. 644, 645–46 (N.D. Ohio 1993), the court upheld sealing because people familiar with the events could identify participants despite redaction. Another court found redaction inadequate where context would reveal unnamed individuals. *In re Search Warrant for 2934 Anderson Morris Rd.*, 48 F. Supp. 2d 1082, 1084 (N.D. Ohio 1999). The Order cited *National Builders* for its protection of an ongoing investigation. Order at 9–10. But closing an investigation does not make an unnamed person harder to identify from a description of that person's conduct or role, and the extensive coverage of this matter makes

identification easier, not harder. Congressman Ogles raised exactly this risk below. Dkt. 32 at 12–14.

The Order concluded that redactions would leave "no danger to Ogles or to anyone else." Order at 9. It reached that conclusion without asking whether the remaining details would identify the people whose names had been removed, and while denying Congressman Ogles's counsel any opportunity to explain how they would. Before authorizing disclosure, the Court should determine whether the redacted narrative still identifies unnamed persons and, if it does, weigh the harm of each identifying passage against the benefit of releasing it. Until that assessment is made, the record does not support the Order's conclusion.

## III. AT A MINIMUM, THE COURT SHOULD PERMIT COUNSEL TO REVIEW THE MATERIALS AND PROPOSE REDACTIONS BEFORE ANYTHING IS RELEASED

If the Court is not prepared to deny Scripps's motion outright, it should still vacate the Order in part and permit Congressman Ogles's counsel to review the sealed materials and the government's proposed redactions under appropriate safeguards, and to submit his own proposals under seal. Congressman Ogles cannot fully explain the harm from passages he has never seen. The Court should hear those explanations before deciding what becomes public.

### A. The Court Has the Authority That the Order Said It Lacked.

The Order denied counsel access because Ogles "did not cite to [sic] any authority demonstrating that the target of a search warrant may propose redactions," and observed that courts "usually solicit proposed redactions from the Government." Order at 10. The authority is the Court's supervisory power over its own records, which permits it to tailor access to protect those whom disclosure would harm. *Nixon*, 435 U.S. at 598–99; *Beckham*, 789 F.2d at 409. A person's status as the subject of a search does not bar him from seeing the affidavits. In *Sealed Search Warrants*, the Fifth Circuit held that the search subject could invoke the qualified common law

right of access to the affidavits supporting the warrants executed against him and remanded for consideration of his request. 868 F.3d at 390, 397–98. Courts in this Circuit have gone even further and provided affidavits to search subjects without making them public. The Southern District of Ohio distinguished requests by search subjects from press requests and directed the government to provide the affidavit to the movants with limited redactions. *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. 296, 299–300, 302 (S.D. Ohio 1995) ("The Court believes that the Fourth Amendment right to be free of unreasonable searches and seizures includes the right to examine the affidavit that supports a warrant after the search has been conducted. . ."). Still, Congressman Ogles asks for less. He asks for his counsel to be able to review the affidavits while they remain under seal for the limited purpose of identifying portions that require redaction.

The Order's reliance on *In re Four Search Warrants*, 945 F. Supp. 1563 (N.D. Ga. 1996), cuts the other way. Order at 9. The court there concluded that disclosure would *benefit* Richard Jewell's reputation—but Jewell and his counsel had received redacted copies of the affidavits, and Jewell did not oppose their release. 945 F. Supp. at 1565–1569. Congressman Ogles has never seen the affidavits and expressly opposes their publication. If anything, *Four Search Warrants* is authority for showing the subject the affidavits, not for keeping them from him.

### B. A Practice of Soliciting the Government's Proposals Is Not a Reason to Exclude the Subject's.

That courts "usually" solicit redactions from the government, Order at 10, describes what happens when the government is the party with a position on sealing. That does not mean that the individual whose privacy is at stake can never be heard. Here, the government takes no position on disclosure and does not represent Congressman Ogles. Its *ex parte* proposals will address its own concerns—investigative techniques, sources, and the like—and cannot substitute for Ogles's explanation of the harm that particular passages would cause him and the third parties he knows.

Scripps's own filings assumed he would participate. Its opening memorandum sought disclosure subject to necessary redactions that "the parties may propose." Dkt. 28 at 16. Its reply asked the Court, if it allowed Ogles to propose redactions, to require a justification for each and to give Scripps an opportunity to respond. Dkt. 33 at 5. Every party to this proceeding contemplated the procedure the Order refused.

## IV. THE MATERIALS SHOULD REMAIN SEALED WHILE THE COURT DECIDES THESE OBJECTIONS AND FOR A PERIOD SUFFICIENT TO SEEK APPELLATE REVIEW

The Order already provides that the materials "will remain sealed as is, pending submission of proposed redactions and further orders of the Court." Order at 11. A Magistrate Judge's order will generally remain in effect unless stayed by the Magistrate Judge or the District Judge. LR 72.01(c). Congressman Ogles asks the Court to order that no unsealing occur while these objections are pending, and that any order authorizing disclosure be stayed for 14 days to permit him to evaluate whether he will seek review in the Sixth Circuit and a stay pending appeal. The request is modest. Orders unsealing judicial records are immediately appealable under the collateral order doctrine, because disclosure, once made, cannot be undone. *See Under Seal v. Under Seal*, 326 F.3d 479, 483–85 (4th Cir. 2003); *cf. Fair Fin.*, 692 F.3d at 428–29 (exercising jurisdiction over appeal from order denying access to search warrant materials); *Kondash v. Kia Motors Am., Inc.*, 767 F. App'x 635, 637 (6th Cir. 2019) (reviewing unsealing order on interlocutory appeal). A stay preserves the Court of Appeals' ability to grant meaningful relief. Its absence would moot it. Nothing in this case is time-sensitive, as the investigation is closed, the underlying events are four years old, and Scripps waited until August 2026 to seek the instant relief. Keeping the materials sealed for the weeks required to complete review costs Scripps nothing.

*   *   *

The relief requested proceeds in order. *First*, the Court should sustain the objections, set aside the Order, and deny Scripps's motion to unseal, because the *Beckham* balance—correctly weighed—favors continued sealing of affidavits containing untested accusations against an uncharged subject and identifiable third parties. *Nixon*, 435 U.S. at 598–99; *Beckham*, 789 F.2d at 409; *Knoxville News-Sentinel*, 723 F.2d at 477–78. *Second*, and at a minimum, the Court should vacate the Order insofar as it denied Congressman Ogles any role in redaction, permit his counsel to review the sealed materials and the government's proposed redactions under confidentiality restrictions, and direct him to submit proposed redactions and supporting justifications under seal, with an opportunity for Scripps to respond, before the Court decides what may be released. *Nixon*, 435 U.S. at 598–99; *In re Search Warrants Issued Aug. 29, 1994*, 889 F. Supp. at 299–302; *In re PennLive*, 2024 WL 1619278, at *4–5. *Third*, in either event, the Court should order that the materials remain sealed while these objections are decided and for 14 days after any order authorizing disclosure, so that Congressman Ogles may seek appellate review and a stay. LR 72.01(c).

## CONCLUSION

For the foregoing reasons, the Court should sustain Congressman Ogles's objections and set aside the Order insofar as it authorizes unsealing of the search warrant materials; or, in the alternative, vacate that ruling in part and permit his counsel to review the sealed materials and the government's proposed redactions under appropriate safeguards and to propose redactions under seal before the Court decides what may be released; and, in either event, keep the materials sealed through the Court's review and for a period sufficient to seek further review and a stay before any release.

Date: September 18, 2026

Respectfully submitted,

LITSON PLLC

*/s/ John R. Glover*
J. Alex Little (No. 29858)
Zachary C. Lawson (No. 36092)
John R. Glover (No. 37772)
54 Music Square East, Suite 300
Nashville, TN 37203
Telephone: 615-985-8205
alex@litson.co | zack@litson.co | jr@litson.co

RAYBIN & WEISSMAN, P.C.

David Louis Raybin (No. 3385)
424 Church Street, Suite 2120
Nashville, Tennessee 37219
Telephone: (615) 256-6666 Ext. 220
draybin@NashvilleTnLaw.com

SECIL LAW PLLC

John S. Irving IV (admitted *pro hac vice*)
John P. Rowley III (admitted *pro hac vice*)
1701 Pennsylvania Ave., N.W., Suite 200
Washington, D.C. 20006
jirving@SECILlaw.com |
jrowley@SECILlaw.com

*Counsel for Congressman Ogles*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18, 2026, a true and correct copy of the foregoing was filed electronically in Case Nos. 3:24-mj-04250 and 3:24-mj-04276 through the Court's CM/ECF system, which will send notice of filing to all counsel of record, including:

John P. Taddei
Trial Attorney, Public Integrity Section
United States Department of Justice
950 Pennsylvania Ave NW, Suite 1716
Washington, DC 20530
John.Taddei@usdoj.gov
*Counsel for the United States*

Paul R. McAdoo (BPR No. 034066)
Reporters Committee for Freedom of the Press
6688 Nolensville Rd., Suite 108-20
Brentwood, TN 37027
*Counsel for Scripps Media, Inc.*

*/s/ John R. Glover*
John R. Glover