**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | |
|---|---|
| IN THE MATTER OF SEARCH OF INFORMATION ASSOCIATED WITH THE GOOGLE ACCOUNT W************1@GMAIL.COM THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE LLC<br><br>IN THE MATTER OF SEARCH OF A WIRELESS TELEPHONE ASSIGNED TELEPHONE NUMBER (615) ***-**** BELIEVED TO BE USED BY WILLIAM ANDREW OGLES | Case Nos. 3:24-mj-04250<br>3:24-mj-04276 |

**<u>SCRIPPS MEDIA, INC.'S OPPOSITION TO CONGRESSMAN OGLES'S OBJECTIONS TO MAGISTRATE JUDGES SEPTEMBER 4, 2026 MEMORANDUM ORDER AND REQUEST FOR REMOVAL OF CERTAIN REDACTIONS FROM OCTOBER 2, 2026 RELEASE OF WARRANT MATERIALS</u>**

Scripps Media, Inc. ("Scripps"), by and through undersigned counsel, files this response in opposition to U.S. Congressman Andy Ogles's Objections to the Magistrate Judge's September 4, 2026 Memorandum Order. Dkt Nos. 35–36.[1] Because the judicial records at issue have now been unsealed in part, Dkt. Nos. 44–45, 53 (Case 3:24-mj-04250); Dkt Nos. 43–44, 52 (Case 3:24-mj-04276), Congressman Ogles's Objections to the September 4 Order are now moot. Accordingly, this Court should deny Congressman Ogles's Objections as moot. In the alternative, in so far as the Court deems the Objections outstanding, this Court should overrule them and order the Warrant Materials unsealed with less redaction, not more.

Should this Court reach the merits of Congressman Ogles's Objections to the September 4 Order, the reasons to reject his arguments are straightforward. Two years ago, two warrants

[1] Unless otherwise indicated, the Docket Number references herein are to Case No. 3:24-mj-04276. This opposition is being filed in both cases noted in the caption.

were issued by this Court authorizing the search and seizure of the personal cell phone and personal email account of Congressman Ogles. Search Warrant Issued, Dkt. No. 1, *Search of Wireless Telephone*, Case No. 3:24-mj-04276 (M.D. Tenn. July 30, 2024); Search Warrant Issued, Dkt. No. 1, *Search of Information Associated with Google Account*, Case No. 3:24-mj-04250 (M.D. Tenn. July 12, 2024). Although the United States (the "Government") had initially sought to keep the warrants under seal, Congressman Ogles almost immediately publicly confirmed the seizure, disputed the propriety of the investigation, and proceeded to publicly file a motion for return of property seeking relief from this Court. Dkt. No. 2. Though Congressman Ogles now wants to put the genie back in the bottle, the public has a profound interest in accessing the judicial records that reflect Government's original conclusion—and this Court's agreement—that probable cause existed to believe seizing property from a sitting U.S. Congressman would reveal evidence of a federal crime. The common law right of access vindicates the public's right to access these judicial records, and this Court should reject Congressman Ogles's attempt to argue otherwise.

## FACTUAL BACKGROUND

Shortly after Congressman Ogles was sworn into the House of Representatives in 2023 to represent Tennessee's Fifth Congressional District, the propriety of his campaign finance disclosures became the subject of widespread news coverage and public interest. *E.g.*, Phil Williams, *He Doesn't Report Having Checking or Savings. So Where Did Andy Ogles Get $320,000 for His Campaign?*, NewsChannel5 (published Nov. 29, 2023, as updated Mar. 9, 2025), https://perma.cc/ZVT8-UEDT; Sam Stockard & Adam Friedman, *Federal Election Officials Threaten Ogles with Campaign Finance Audit or Enforcement—Again*, Tenn. Lookout (Sept. 6, 2023), https://perma.cc/4LMU-PAL2; Marianna Bacallao, *Watchdog Group Asks Congress to Investigate Tennessee U.S. Rep. Andy Ogles, flagging $1M Discrepancy in Financial Disclosures*,

WPLN (Jan. 9, 2024), https://perma.cc/VN67-62DF. A federal investigation into these disclosures ensued. According to public filings by the Government in this matter, on July 12, 2024, this Court "approved a warrant to seize and search information associated with a Google account registered to" Congressman Ogles (the "Email Warrant") in case number 3:24-mj-04250. Dkt. No. 10 at 2 (3:24-mj-04276). The Email Warrant was "directed to Google LLC." *Id.* The Court "placed the warrant and associated materials under seal and ordered Google not to disclose the existence of the warrant to [Congressman] Ogles or any other person based on a finding that there was reason to believe notification would seriously jeopardize the investigation." *Id.* at 2–3.

Separately, on July 30, 2024, the Court approved a warrant in the matter docketed at 3:24-mj-04276, authorizing the government "to seize and search Ogles's personal cell phone" (the "Cell Phone Warrant"). *Id.* at 3. The Cell Phone Warrant "indicated that the government was seeking evidence related to campaign finance violations." *Id.* at 4. On August 2, 2024, federal agents seized Congressman Ogles's cell phone pursuant to the Cell Phone Warrant. *Id.* at 3. Because a search and seizure directed at a sitting congressional representative is an exceptional and unusual measure, the execution of the warrant drew widespread media coverage and public interest. *E.g.*, Phil Williams, *FBI Agents Execute Search Warrant on Tennessee Congressman Andy Ogles, NewsChannel 5 Confirms*, NewsChannel5 (originally published Aug. 6, 2024), https://perma.cc/UZY4-A8Q9; Jonathan Mattise & Kimberlee Kruesi, *GOP Rep. Andy Ogles of Tennessee Says FBI Took His Cellphone in Campaign Finance Probe*, Associated Press (Aug. 6, 2024), https://perma.cc/2WJE-VUUQ.

Congressman Ogles publicly confirmed that his cell phone had been seized, posting on the social media platform X that federal agents were investigating "the same well-known facts" related to whether his "campaign made mistakes in our initial financial filings" as had been "widely

reported for months." Congressman Andy Ogles (@AndyOgles), X (Aug. 6, 2024, at 8:15 PM), https://perma.cc/SSJ7-JAJJ. The Government then moved for authorization to disclose the existence of the Email Warrant to Congressman Ogles. Dkt. No. 2 (3:24-mj-04250). It did not seek authorization to make the Email Warrant available to the broader public. This Court authorized the government to disclose the Email Warrant and its attachments to Congressman Ogles. Dkt. No. 3 (3:24-mj-04250).

The matter remained sealed vis-à-vis the public until September 3, 2024, when Congressman Ogles publicly filed a motion for return of property, Dkt. No. 2 (3:24-mj-04276), in this Court, thereby publicly identifying the existence of both the Cell Phone and Email Warrants. *Id.* at 7 ¶¶ 17–18. The next day, this Court ordered the dockets related to both warrants unsealed but kept the "warrant[s] and all attachments" filed at Dkt. No. 1 in each respective matter sealed. Dkt. No. 4 (3:24-mj-04276); Dkt. No. 6 (No. 3:24-mj-04250).

Congressman Ogles's motion for return of property argued that prosecutors did "not have substantial evidence linking Congressman Ogles to the commission of a crime," Dkt. No. 2 at 3, and that his phone and email account contained "large quantities of legislative material protected from disclosure under the Speech or Debate clause" which could not be rifled through by investigators within the executive branch. *Id.* at 11. Congressman Ogles also suggested that the investigation was improperly politically motivated. *Id.* at 20 (noting that "only days before the Executive sought the search warrants, Congressman Ogles introduced articles of impeachment against Vice President Kamala Harris").

The Government, for its part, responded that its investigation was "unrelated to legislative acts," Dkt. No. 10 at 8, and argued that "Section II of Attachment B for each warrant . . . describes the information to be seized, and neither warrant indicates that the government seeks to seize

evidence related to Ogles's legislative acts," *id.* at 6. In response to Congressman Ogles's accusations of political bias, the Government argued that "a warrant cannot issue except on a showing of probable cause to a neutral and detached judicial officer that a particular device contains evidence of crime." *Id.*

On October 7, 2024, the Government represented it would not review the contents of Congressman Ogles's cell phone or email account pending a decision on his motion. Dkt. No. 17-1 at 3 ¶ 11 (3:24-mj-04276). The matter remained pending until May 5, 2026, when Congressman Ogles withdrew his motion and represented to this Court that "the Government has advised defense counsel that it will promptly return or destroy the property and information obtained pursuant to the respective search warrants at issue." Dkt. No. 24 at 1 (3:24-mj-04276). Shortly thereafter, Congressman Ogles announced at a press conference with other lawmakers that "this DOJ has cleared me." *Rep. Andy Ogles News Conference on Justice Department Surveillance*, at 3:27–3:30, C-SPAN (May 13, 2026), https://bit.ly/45nV3s4. At the same press conference, Congressman Ogles reiterated his belief that the investigation was improperly motivated by political bias, stating the "Biden Administration was willing to intentionally violate [the Speech and Debate Clause] to punish its adversaries, to target conservatives, specifically to target Republicans." *Id.* at 1:57–2:16.

Meanwhile, as described in the Magistrate Judge's Order, a parallel investigation ensued within the legislative branch. Dkt. No. 33 at 2–4. On January 9, 2024, the Campaign Legal Center submitted a complaint about Congressman Ogles to the United States House of Representatives Office of Congressional Ethics, now known as the Office of Congressional Conduct ("OCC"). Letter from Kedric L. Payne, Gen. Couns., Campaign Legal Ctr., et al., to Paul Vinovich, Chairman, & Mike Barnes, Co-Chairman, Off. Cong. Ethics (Jan. 9, 2024),

https://perma.cc/EHC8-V63M. On January 2, 2025, OCC referred Congressman Ogles to the House Ethics Committee on allegations that he "omitted or misrepresented required information in his financial disclosure statements or FEC candidate committee reports." Off. Cong. Conduct, *OCE Referral Regarding Rep. Andy Ogles* (Jan. 2, 2025), https://perma.cc/V653-YC97. The same day, OCC published a report detailing its investigation and findings, Off. Cong. Ethics, H.R., Report, Rev. No. 24-3057 (June 20, 2024), https://perma.cc/U6MR-Q36F ("OCC Report"), along with its accompanying exhibits, https://perma.cc/B7EF-KS4Q ("OCC Exhibits"). The OCC Report indicated that in Congressman Ogles's campaign's July 2022 Quarterly Report, "the campaign reported receiving a $320,000 loan from Rep. Ogles's personal funds on April 15, 2022." OCE Report at 7. But following OCC's review, Congressman Ogles's campaign committee "amended its FEC reports, correcting the amount of the loan and the campaign's cash on hand over time" to reflect that "the loan made by Representative Ogles to the campaign was not in the amount of $320,000, but rather $20,000." *Id.* at 8–9. The Report indicated the individuals from whom OCC had sought documentary and testimonial information, *id*. at 4–5, and revealed that OCC had conducted interviews with two individuals referred to as "Witness 1" and "Witness 2" in its Report. *Id.* at 9–10. The OCC Exhibits included transcripts of the interviews with these individuals. OCC Ex. 2 (transcript of Witness 1 interview) & Ex. 4 (transcript of Witness 2 interview). The transcript of the interview with Witness 1 confirms that their role was the "treasurer for Representative Andy Ogles's campaign," OCC Ex. 2 at 6, Witness 2 confirmed they were the "campaign manager." OCC Ex. 4 at 6.

Shortly after Congressman Ogles announced that the Government in its criminal investigation had "cleared" him, *Rep. Andy Ogles News Conference on Justice Department Surveillance*, C-SPAN, *supra*, Scripps filed the motion to intervene and unseal, seeking:

(1) The filings docketed at Dkt. No. 1 in the matter of *Search of Wireless Telephone*, 3:24-mj-04276 (M.D. Tenn. 2024), including the warrant, the Government's application, any attachments, and other associated filings; and

(2) The filings docketed at Dkt. No. 1 in the matter of *Search of Information Associated with Google Account*, No. 3:24-mj-04250 (M.D. Tenn. 2024), including the warrant, the Government's application, any attachments, and other associated filings.

(collectively, the "Warrant Materials"). Dkt. Nos. 26–27. On September 4, 2026, Magistrate Judge Evans issued the decision under review, granting Scripps's motion in part but providing the Government an opportunity to propose redactions to the requested materials. Dkt. No. 33. Congressman Ogles filed objections to the Magistrate Judge's Order, Dkt. No. 35, and a memorandum of law in support of his objections, Dkt. No. 36.

Separately, on October 2, 2026, Magistrate Judge Evans issued an order instructing the Clerk of Court to unseal the Government's proposed redacted copies of the Warrant Materials in each case. Dkt. No. 43 (3:24-mj-04276); Dkt No. 44 (3:24-mj-04250). The Clerk of Court complied with that order and released the partially redacted Warrant Materials in each docket. Dkt. No. 44 (3:24-mj-04276); Dkt No. 45 (3:24-mj-04250). On October 3, 2026, the Warrant Materials were provisionally resealed. Dkt. No. 48 (3:24-mj-04276); Dkt No. 49 (3:24-mj-04250). On October 9, 2026, this Court ordered the partially redacted Warrant Materials to be placed back on the public docket. Dkt No. 52 (3:24-mj-04276); Dkt No. 53 (3:24-mj-04250).

The partially unsealed affidavit in case 3:24-mj-04276 included redactions for certain information that is already contained in public FEC filings, including the names of individuals who had electronically signed those reports, *see* Dkt. No. 44-1 ¶¶ 10, 22–23, 25–26, 28, 30, including, for example, the identity of the campaign treasurer listed on Andy Ogles for Congress's Statement of Organization, which was publicly filed on April 2, 2022, which public documents confirm was Lee Beaman, https://docquery.fec.gov/pdf/227/202204069495954227/202204069495954227.pdf,

and the individual who was listed as campaign treasurer on the Statement of Organization filed on August 25, 2022, which public documents confirm was Thomas Datwyler, https://docquery.fec.gov/pdf/479/202208259528244479/202208259528244479.pdf. It also included redactions of substantial information about the Government's assertions concerning the reported figures in Congressman Ogles's reports. *See* Dkt. No. 44-1 ¶¶ 35–40. The redactions also include substantial information about the Government's assertions regarding the evidence the Cell Phone was likely to contain. *See id.* ¶¶ 44(a)–44(d).

The partially unsealed affidavit in case 3:24-mj-04250 included similar redactions for the identities of individuals who had signed publicly filed FEC reports, *see* Dkt. No. 45-1 ¶¶ 12, 24–25, 27–28, 30, 32, the Government's assertions regarding the various reported figures in Congressman Ogles's campaign filings, *see* Dkt. No. 45-1 ¶¶ 38–43, along with substantial information about the Government's assertions regarding the evidence the Email was likely to contain. *See id.* ¶¶ 47–49.

**ARGUMENT**

**I. Congressman Ogles's objections are moot.**

As set forth in Scripps' Response to Representative Ogles' Emergency Motion to Restore the Seal on the Search Warrant Materials Pending Resolution of his Objections., Dkt. No. 49, which Scripps incorporates fully herein, Congressman Ogles's Objections are now moot. "The test for mootness 'is whether the relief sought would, if granted, make a difference to the legal interests of the parties . . . .'" *McPherson v. Mich. High Sch. Athletic Ass'n, Inc.*, 119 F.3d 453, 458 (6th Cir. 1997) (en banc). Such is the case here, where the judicial records at issue have already been made available to the public by virtue of the Magistrate Judge's separate October 2, 2026 orders, Dkt. No. 43 (3:24-mj-04276); Dkt Nos. 44 (3:24-mj-04250), and this Court's October 9, 2026 Order placing those same records back on the public docket, Dkt No. 52 (3:24-mj-04276);

Dkt. No. 53(3:24-mj-04250). Granting Congressman Ogles the relief he seeks in his objections—the overruling of the Magistrate Judge's earlier, September 4, 2026 Order—would not make any difference, as this Court has already recognized, "[o]nce information is published, it cannot be made secret again." *Rudd Equipment v. John Deere Const. and Forestry*, 834 F.3d 589, 592 (6th Cir. 2016) (quoting *In re Copley Press, Inc*., 518 F.3d 1022, 1025 (9th Cir. 2008)); *United States v. Southeast Eye Specialists, PLLC*, 586 F. Supp. 3d 787, 794–95 (M.D. Tenn. 2022) (after a sealed documents are unsealed "the bell cannot now be unrung.").

This Court should, accordingly, deny the Objections as moot.

## II. Congressman Ogles's objections are meritless.

### A. The common law creates a presumption of access to judicial records related to the search of Congressman Ogles's phone and email account.

Even if this Court were to reach the merits of Congressman Ogles's Objections, it should reject them. Congressman Ogles begins by taking issue with the characterization of the common law presumption in favor of access as a "strong" one. Dkt. No. 36 at 7. To start with first principles, the common law affords the public a qualified "right to inspect and copy public records and documents, including judicial records and documents." *United States v. Beckham*, 789 F.2d 401, 409 (6th Cir. 1986) (citing *Nixon v. Warner Commc'ns, Inc.,* 435 U.S. 589, 597 (1978)). The common law right of access is qualified because it creates a "a presumption in favor of access," *id*., which may be abridged "if, in the exercise of the court's sound discretion, [the court] determines that non-disclosure is warranted." *United States v. DeJournett*, 817 F.3d 479, 485 (6th Cir. 2016).

Ordinarily, in this Circuit, there is a "strong common law presumption in favor of public access to court proceedings and records." *Rudd Equip. Co., Inc. v. John Deere Constr. & Forestry Co*., 834 F.3d 589, 594 (6th Cir. 2016). The reason for this is simple: "[o]penness in judicial

proceedings promotes public confidence in the courts." *Application of Nat'l Broad. Co., Inc.*, 828 F.2d 340, 347 (6th Cir. 1987). And access to "information contained in court documents" is critically necessary "because court records often provide important, sometimes the only, bases or explanations for a court's decision." *Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1177 (6th Cir. 1983). As such, "[a]ny attempt to maintain secrecy, as to the records of this court, would seem to be inconsistent with the common understanding of what belongs to a public court of record, to which all persons have the right of access." *In re Knoxville News-Sentinel Co., Inc.*, 723 F.2d 470, 474 (6th Cir. 1983) (quoting *Ex Parte Drawbraugh*, 2 App. D.C. 404, 407 (D.C. Cir. 1894)).

Contrary to Congressman Ogles's assertions, the fact that warrant proceedings are *ex parte* heightens the need for public access, it does not lessen it. Because the Fourth Amendment protects against unreasonable searches and seizures and requires probable cause before a warrant may issue, U.S. Const. amend. IV, "a court's determination that a person's property may be seized involves the adjudication of that person's substantive rights." *United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, Ca., in Acct. No. 7986104185*, 643 F. Supp. 2d 577, 584 (S.D.N.Y. 2009). And applications and affidavits submitted by law enforcement in support of such warrants "contain the information forming the basis for the probable cause determinations that were prerequisites for the issuance of the seizure warrants." *Id.* Accordingly, even in a run-of-the-mill case, access to warrant application materials "serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1194 (9th Cir. 2011). Of course, a warrant "[does] not establish anyone's guilt," *contra* Dkt. No. 36 at 9, but access to court records is not about whether that record definitively establishes anything—it is

about the public's right to supervise the judiciary in a democratic system of government. *Cf. Application of Nat'l Broad. Co.*, 828 F.2d at 347; *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1177; *In re Knoxville News-Sentinel Co.*, 723 F.2d at 474.

For just those reasons, federal courts throughout the country have recognized that judicial records filed in connection with search warrant proceedings—including warrants, affidavits, returns, and inventories—are judicial records subject to the qualified common law right of access. *E.g., Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65 (4th Cir. 1989) (recognizing "the common law qualified right of access to the warrant papers"); *United States v. Sealed Search Warrants*, 868 F.3d 385, 396 (5th Cir. 2017) (extending "the common law qualified right of access to judicial records to situations involving an individual's request to access pre-indictment warrant materials"); *Matter of Search of 1638 E. 2nd St., Tulsa, Okl.*, 993 F.2d 773, 775 (10th Cir. 1993) (agreeing "affidavits for search warrants are judicial records" subject to common law right of access) (internal quotations omitted); *In re L.A. Times Commc'ns LLC*, 28 F.4th 292, 297 (D.C. Cir. 2022) (recognizing common law right applies to "search warrant materials"); *see also Bus. of Custer Battlefield Museum & Store*, 658 F.3d at 1192 (common law right of access only attaches "after an investigation has ended"). The Sixth Circuit has likewise recognized that "the common law right of access to judicial documents may in some situations permit access to search warrant proceedings," where "the public's right to know outweighs interests of privacy in sealing a particular document." *In re Search of Fair Fin.*, 692 F.3d 424, 433 (6th Cir. 2012).

Against that backdrop, the Magistrate Judge's Order appropriately weighted the presumption of access to search warrant materials as a strong one, recognizing the "role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Dkt. No. 33 at 8 (quoting *United States v.*

*Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)). Congressman Ogles's effort to circumvent that straightforward conclusion should be rejected.

**B. The public has a powerful interest in accessing the judicial records related to the search of Congressman Ogles's phone and email account.**

Although Congressman Ogles quibbles with the strength of the common law presumption in favor of access, he cannot dispute that warrant materials should be unsealed where "the district court in its discretion, as supervisor of its own records and files, finds that the public's right to know outweighs interests of privacy in sealing a particular document." *Search of Fair Fin.*, 692 F.3d at 433. In every case involving a warrant, "public access to documents filed in support of search warrants is important to the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *In re Search Warrant for Secretarial Area Outside Off. of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). And here, the public's interest is particularly pronounced.

"[W]hen the conduct of public officials is at issue, the public's interest in the operation of government adds weight in the balance" toward allowing access to judicial records. *Beckham*, 789 F.2d at 413. There can be little dispute that the public has a substantial interest in understanding the basis for the Government's conclusion—and this Court's—that probable cause existed to believe seizing property from a sitting U.S. Congressman would reveal evidence of a federal crime. *Cf. In re L.A. Times*, 28 F.4th at 298 (recognizing "powerful public interest in learning of a sitting Senator's potential violation of" federal laws). And the public has an equally strong interest in evaluating potential misconduct by federal law enforcement. *Cf. Application of Nat'l Broad. Co., Inc.*, 635 F.2d 945, 952 (2d Cir. 1980) ("The presumption is especially strong in a case like this where the evidence shows the actions of public officials, both the defendants and law enforcement personnel."). Ultimately, though, whether the Government's justifications for the search was

flimsy or ironclad, "the public is entitled to assess for itself the merits of judicial decisions," and thereby has an interest in "ascertaining what evidence and records" this Court relied on in reaching its decision to issue the warrants. *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299, 305 (6th Cir. 2016). Accordingly, the Magistrate Judge committed no error in concluding that the public has a "strong interest" in accessing the warrant materials, even if much has already been made publicly known about the Government's investigation. Dkt. No. 33 at 9.

Moreover, the public's interest is heightened here because the warrants at issue authorized the seizure of property and information from a member of the legislative branch. Such searches implicate sensitive separation of powers issues between the executive and legislative branches. *See, e.g.*, *United States v. Rayburn House Off. Bldg.*, 497 F.3d 654, 661 (D.C. Cir. 2007) (discussing implications of "the disclosure of legislative materials to agents of the Executive"). Congressman Ogles argued that the separation of powers issues in these very proceedings following the execution of the warrant. Dkt. No. 2 at 3. And Congressman Ogles has repeatedly called into question the executive branch's motivations and justifications for the search, both before this Court and in public statements and press conferences. *Id*. at 20; *Rep. Andy Ogles News Conference on Justice Department Surveillance*, C-SPAN, *supra*, at 1:57–2:16.

It bears underscoring that although Congressman Ogles directs the majority of his arguments in his Objections at avoiding unsealing the "affidavits [that] were written by agents to obtain a warrant," *see* Dkt. No. 36 at 8–11, the Warrant Materials Scripps sought here include not just the affidavits, but the warrants themselves and their attachments. That includes Attachment B to the warrants, which the Government represented in its filings included "limitations . . . which identify the material the government is authorized to seize and confirm the focus of the government's investigation is unrelated to his legislative acts." Dkt. No. 10 at 17. That a litigant

in the proceedings surrounding Congressman Ogles's motion for return of property sought to rely on the sealed warrant materials in an effort to "inform the court's ultimate disposition" of a request for judicial relief further bolsters the need for access. *Cf. United States v. Campbell*, No. 1:19-CR-25, 2021 WL 1975319, at *3 (S.D. Ohio May 18, 2021) (explaining that where warrant affidavit was submitted as attachment to motion to suppress, it became part of the "adjudication stage" and was thus subject not just to the common law right of access but to a right of access arising under the First Amendment). Thus, while there is a substantial public interest in accessing both the affidavits and the warrants themselves, there can be no dispute that the warrants should be unsealed, at a minimum.

**C. Congressman Ogles does not have a cognizable privacy interest in avoiding disclosure of the Warrant Materials.**

Congressman Ogles strenuously asserts that because the Government declined to prosecute him, the Magistrate Judge should have ignored the extensive prior public disclosures about this case, including the ones made by Congressman Ogles himself, as well as the facts that Congressman Ogles is a public official and this investigation concerned his campaign for public office. Even if the Warrant Materials had not already been unsealed in part, Congressman Ogles would be incorrect.

This was never a case where the publication of a warrant could "damage an unindicted target's reputation while leaving no judicial forum to rehabilitate that reputation." *Contra* Dkt. No. 36 at 8–9 (quoting *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017)). Congressman Ogles has publicly acknowledged the existence of the investigation and the execution of the warrants against him and confirmed that the investigation related to "well-known facts" surrounding his campaign filings. Congressman Andy Ogles (@AndyOgles), *supra*. The Government, too, has confirmed the warrants sought "evidence related to campaign finance

violations," and that "Ogles was best categorized as a subject, meaning he was a person whose conduct was within the scope of the government's investigation." Dkt. No. 10 at 4–5. And, as the Magistrate Judge's Order recognized, the OCC Report provided the public with substantial information about the nature of Congressman Ogles's alleged campaign finance violations. *See* Dkt. No. 33 at 2–3 (describing OCC Report).

Nor could Congressman Ogles seriously have claimed that his lack of access to a criminal trial in this case meaningfully deprived him of the opportunity to rehabilitate his reputation. He is a public official with "significantly greater access to the channels of effective communication" than a private person. *Gertz v. Robert Welch, Inc*., 418 U.S. 323, 344 (1974). Just months ago, he declared at a press conference that the Government had "cleared" him of any crime, *Rep. Andy Ogles News Conference on Justice Department Surveillance*, at 3:27–3:30, C-SPAN, *supra*, and has long sought to shape public debate about the allegations against him on social media. OCC Report at 9 (describing Congressman Ogles explanation on social media that the "$320,000 had been a 'pledge' he made to his campaign," and that "while [h]e only needed to transfer $20,000, unfortunately, the full amount of [his] pledge was mistakenly included" (original alterations omitted)). Meanwhile, he has also already had access to a judicial forum in which to dispute the charges against him—in these proceedings, he publicly filed a motion for return of property which argued in part that prosecutors did "not have substantial evidence linking Congressman Ogles to the commission of a crime." Dkt. No. 2 at 3. That is to say nothing of the other judicial fora to which Congressman Ogles might have access in a later collateral proceeding. *Cf. Blackburn v. Smith*, No. 3:26-cv-01398 (M.D. Tenn., filed Sept. 30, 2026) (U.S. Senator bringing suit and alleging Fourth Amendment and other violations arising from subpoena).

Instead, this was always a case involving a "publicly acknowledged investigation of widely known allegations of misconduct, significantly minimizing the risk that the requested disclosure would raise new privacy and reputational concerns." *Matter of Application of Wash. Post Co. LLC*, 201 F. Supp. 3d 109, 125 (D.D.C. 2016). Ample precedence confirms that privacy interests are diminished in circumstances like these, where an "investigation involved actions taken by a public official in his public capacity," the investigation has been covered by "extensive media reporting," and the subject has themselves acknowledged the investigation. *In re L.A. Times*, 28 F.4th at 298. For example, in 2024, the Middle District of Pennsylvania agreed that the search warrant and affidavit concerning the search of the person and cell phone of Congressman Scott Perry as part of an investigation into the attack on the U.S. Capitol on January 6, 2021, could be unsealed in part, where "the main parties may have already been identified in connection with other sources, such as the January 6th Report and the indictments in the District of Columbia and Georgia." *In re PennLive*, No. CV 1:22-MC-00756, 2024 WL 1619278, at *4 (M.D. Pa. Apr. 15, 2024). That was true even though Congressman Perry had not been charged in the case and never was. *Id.* at *4 (characterizing investigation as "ongoing"). Similarly, in 2022, the District of Columbia agreed that materials submitted in connection with a search warrant executed on U.S. Senator Richard Burr's cellphone in connection with an insider-trading investigation could be unsealed in part, "even though this closed investigation resulted in no criminal charges." *In re Los Angeles Times Commc'ns LLC*, 628 F. Supp. 3d 55, 66 (D.D.C. 2022). That was because much of the "information already has been disclosed in other fora or otherwise confirmed, including, as here, by the targets themselves in public statements that DOJ had closed an investigation into their conduct." *Id.* And in 2016, the District of Columbia granted in part a motion to unseal search warrant materials in connection with an investigation into possible illegal campaign finance

activities undertaken during the 2010 District of Columbia mayoral election, where the prosecutions arising from that investigation had become "widely known" such that "blanket secrecy" was no longer necessary. *Matter of Application of Wash. Post Co. LLC*, No. CV 16-MC-351 (BAH), 2016 WL 1604976, at *2 (D.D.C. Apr. 1, 2016).

Sidestepping these authorities, Congressman Ogles cites *In re Search Warrant*, No. M-3-94-80, 1996 WL 1609166 (S.D. Ohio Aug. 20, 1996). To be clear, in that case, the court ***unsealed*** a search warrant, application, supporting affidavit, and return after the subject of the investigation had pled guilty. In so doing, the court rejected the subject's argument that he "retain[ed] a privacy interest in information unrelated to the charge and plea," upon the closure of the investigation, even though the government had not prosecuted him for those other allegations. *Id.* *3. It explained that "an asserted interest in reputational harm, standing alone, is *not* sufficient to outweigh the common law right of access to public documents." *Id.* at *3 (emphasis in original) (citing *Brown & Williamson Tobacco Corp.*, 710 F.2d at 1179)). Congressman Ogles inexplicably ignores all of this, and instead cherry-picks a quote from an opinion in the same case from two years before, when the court had declined to unseal the warrant materials pre-indictment and while the investigation was ongoing. *See id.* at *5–15 (text of previous decision). Although the court suggested where "no indictment will be sought," the privacy interest "would seem" to be "overwhelmingly strong," because "a person no longer the subject of an investigation has powerful reason to avoid having the matter of that investigation brought up and before the public," *id.* at *13, the court did not suggest that principle represented an ironclad rule. To the contrary, the court explained that "[t]he party seeking access may also seek to diminish the value of the asserted privacy right by demonstrating that the contents of the sealed materials are already public

knowledge," because "the party opposing access can have no legitimate privacy interest in matters that are no longer private." *Id.* Such is the case here.

Congressman Ogles also cites a portion of the Government's brief in opposition to the unsealing of the warrant affidavit relating to the search of Congressman Perry. *See* Ogles Mem. at 9 (citing *In re PennLive, York Daily Rec., & York Dispatch to Unseal Ct. Recs*., No. 1:22-MC-00756, 2023 WL 3318679, at *6 (M.D. Pa. May 9, 2023)). That brief is neither binding nor persuasive. As described above, the court there ordered the disclosure of substantial portions of that affidavit, including the portions that related to Congressman Perry. *Compare In re Penn Live*, No. 1:22-MC-00756, 2024 WL 2154383, at *19 (M.D. Pa. Jan. 19, 2024) (report and recommendation by magistrate judge recognizing redactions rather than wholesale sealing was appropriate "given the vast amount of information that is already publicly available regarding the investigation at issue here as well as our own reading of the affidavit and other warrant materials") *with In re PennLive*, No. CV 1:22-MC-00756, 2024 WL 1619278, at *4 (M.D. Pa. Apr. 15, 2024) (overruling government's objections to report and recommendation in part). The redacted warrant application and affidavit that eventually was released contained only narrow redactions for certain third-party names, it did not withhold the warrants based on Congressman Perry's purported reputational interests as an uncharged subject. *See* Redacted Warrant Appl. & Aff., *In re Matter of Search of the Person of Scott Perry*, 1:22-mc-00602 (Aug. 2, 2022), https://perma.cc/HQZ4-HDCP.

**D. Third-party privacy interests do not entitle Congressman Ogles to a veto over disclosure.**

Congressman Ogles next hypothesized, at a time when he had not previously seen the affidavits even in their redacted form, that "the warrant affidavits presumably identify people who have never been publicly associated with the federal investigation, hold no public office, and have

made no public statements about it." Dkt. No. 36 at 13. He also insists that he should get the opportunity to propose his own redactions to the affidavits. *Id.* at 15. Again, even if the Warrant Materials had not already been released, that is not the way that the common law right of access ordinarily works, and the Magistrate Judge's Order committed no error in declining to adopt that novel procedure.

Because court records belong to the court, not to the parties, "[t]he responsibility for articulating the justification for sealing judicial documents has been recognized to rest, logically, with the judicial officer imposing the seal." *Search of Fair Fin.*, 692 F.3d at 433–34. Thus, while courts in warrant proceedings may sometimes "adopt the facts that the government presents to justify sealing," *id.* at 434, there is no requirement that courts give intervenors who have never seen the records at issue a veto over the public's right of access, as Congressman Ogles seems to envision. And there is good reason to doubt the efficacy of the procedure Congressman Ogles now proposes. As a point of factual clarification, although Congressman Ogles avers he "cannot fully explain the harm from passages he has never seen," *see* Dkt. No. 36 at 15, that objection appears to be directed only to the unsealing of the affidavits. Congressman Ogles's counsel has had access to the warrants themselves for over two years. Dkt. No. 10 at 6 (representing "Ogles's counsel has a copy of the warrants"). Despite that access, Congressman Ogles has not identified a particularized harm from disclosure of the warrants themselves.

More to the point, Congressman Ogles offers no reason why he or his attorneys would have been better equipped than the Government or this Court to evaluate any extant third-party privacy interests in the Warrant Materials. To the contrary, Congressman Ogles overstates the third-party privacy interests at issue here. Unlike in *Knoxville News-Sentinel*, where "statutory provisions and regulatory rules" favored secrecy of the identity and privacy of the customers of the bank whose

names were included in the records, 723 F.2d at 476, here, federal election law requires extensive disclosures by candidates and their campaigns to serve the public interest. *See, e.g.*, 11 C.F.R. § 102.2 (requiring statements of organization to be filed with FEC to identify the "name and address of the treasurer," along with the "name, address, and committee position of the custodian of books and accounts"); 11 C.F.R. § 104.3 (describing reporting requirements); *see also Buckley v. Valeo*, 424 U.S. 1, 67–68 (1976) (recognizing "full disclosure during an election campaign tends 'to prevent the corrupt use of money to affect elections'" and that "recordkeeping, reporting, and disclosure requirements are an essential means of gathering the data necessary to detect violations" of campaign finance law) (cleaned up). The documents filed by campaigns in general and by Andy Ogles for Congress's campaign committee in particular are public documents, they are readily available to the public on the Federal Election Commission's website.[2]

Meanwhile, the OCC already published the entirety of the transcripts of its interviews with the "treasurer for Representative Andy Ogles's campaign," OCC Ex. 2 at 6, along with the "campaign manager." OCC Ex. 4 at 6. Though these individuals were not identified by name in the OCC Report, the identities of Congressman Ogles's campaign employees and agents are not a secret, treasurers are identified on the campaign's FEC filings. *See, e.g.*, Statement of Organization (filed Apr. 6, 2022), *supra* (identifying Lee Beaman as treasurer); Statement of Organization (filed Aug. 25, 2022), *supra* (replacing Beaman with Thomas Datwyler); Noah Lanard, *A GOP Congressman's Campaign Finance Problem Just Got Worse*, Mother Jones (Jan. 15, 2025), https://perma.cc/S8T9-6VWE (identifying current treasurer and 2022 campaign manager by name). Other employees, including the campaign manager, have already been

[2] *Andy Ogles for Congress*, Fed. Election Comm'n, https://www.fec.gov/data/committee/C00811844/?tab=filings&cycle=2022 (last visited Oct. 9, 2026).

identified in media reporting. *Id.* (noting "Thomas Datwyler, Ogles's treasurer, and Grant Henry, his 2022 campaign manager and current chief of staff, did talk to and share documents with investigators").[3] In circumstances such as these, the Magistrate Judge could have exercised his discretion to order the affidavits to be made public in full because "the diminished privacy interests of third parties whose names have already been made public . . . do not outweigh the common law presumption of public access, and do not support redaction of their names and other identifying information." *In re Search Warrant*, 1996 WL 1609166, at *4.

The Magistrate Judge's September 4, 2026 Order certainly committed no error in declining to invite Congressman Ogles to redact *more* than the names and identifying information of any third parties that might hypothetically have a privacy interest. In this Circuit, sealing must be "no broader than necessary," *Shane Grp.*, 825 F.3d at 306, and be demonstrated on a "document-by-document, line-by-line basis," *id.* at 308. In keeping with that principle, courts have routinely concluded that redaction of "names and other identifying information" of unidentified third parties is typically sufficient to protect their privacy interests vis-à-vis the public. *See, e.g.*, *In re Search Warrant*, 1996 WL 1609166, at *4 (recognizing privacy interests "may effectively be protected by redacting the names and other identifying information of these third parties from the Search Materials"); *In re PennLive*, 2024 WL 1619278, at *5 (agreeing "the warrant materials can be unsealed after they are appropriately redacted," including to protect unnamed third parties, where there had "been public disclosure of much of the information"). This is not a case where broader redactions are necessary to avoid "compromis[ing] the ongoing government investigation" by

[3] Notably, Beaman was nominated to the Tennessee Valley Authority and was asked about his association with the campaign in his confirmation hearings, and acknowledged that "he received an inquiry from the House Ethics Committee in September and that he had responded to the committee's questions." *See* Phil Williams, *Longtime Political Supporter of Congressman Ogles Disputes Claims Made in His Campaign Reports*, NewsChannel5 (Dec. 21, 2025), https://perma.cc/U34R-49HG.

tipping off subjects about its nature and scope, *contra Matter of Search Warrants for Nat'l Builders Corp.*, 833 F. Supp. 644, 646 (N.D. Ohio 1993), because the investigation is closed, and any potential subjects have long known of it. *See* Dkt. No. 10 at 21 (noting because Congressman Ogles had publicly disclosed the warrant and filed his motion on the public docket, "[a]ny other potential subject of the investigation is now able to learn of the existence of what would have been lawful, covert legal process").

In short, even if the Warrant Materials had not already been disclosed, the public interest in disclosure here is significant, the privacy interests are slight, and this Court should reject Congressman Ogles's effort to complicate this straightforward case by proposing a novel procedure that would serve no interests but delay.

## III. Based on the public's profound interest in disclosure and the insubstantial privacy interests at stake, more disclosure is appropriate here, not less.

As set forth above, in the event the Court overrules Congressman Ogles's Objections on mootness grounds, it need not reach their merits. However, to the extent that the Court concludes that Congressman Ogles's Objections still present any live issue, and although the Magistrate Judge's separate October 2, 2026 order regarding redactions are not now before this Court, Scripps would respectfully request that the Court not only reject the Objections but go a step further and remove certain redactions from the Warrant Materials. In particular, the redactions should be removed from the portions of the affidavits that identify third parties whose names are already public. That includes paragraphs 10, 22–23, 25–26, 28 and 30 from the affidavit in case 3:24-mj-04726, Dkt. No. 44-1, and paragraphs 12, 24–25, 27–28, 30, and 32 from the affidavit in case 3:24-mj-04250, Dkt. No. 45-1. This Court should also remove the redactions regarding the affiant's assertions about why the reported figures in Congressman Ogles's reports were problematic in each affidavit, *see* Dkt. No. 44-1 ¶¶ 35–40 (3:24-mj-04726), Dkt. No. 45-1 ¶¶ 38–43 (3:24-mj-

04250), considering the public's substantial interest in independently evaluating the substantive basis for the Government's probable cause showing, and the fact that neither Congressman Ogles nor anyone else has a substantial privacy interest in avoiding disclosure of those portions of the affidavit. And the redactions in the paragraphs that concern the evidence the Cell Phone and Email Account were likely to contain, *see* Dkt. No. 44-1 ¶¶ 44(a)–44(d) (3:24-mj-04726); Dkt. No. 45-1 ¶¶ 47–49 (3:24-mj-04250), are also improper, considering the public interest in evaluating the appropriateness of the Government's seizure here of information from a member of the legislative branch, and the limited privacy interests at stake here.

**CONCLUSION**

For the foregoing reasons, and for the reasons set forth in its Motion to Intervene and Unseal, Dkt. Nos. 26–27, and Reply in Further Support thereof, Dkt. No. 32, Scripps respectfully asks the Court to deny Congressman Ogles's Objections to the Magistrate Judge's September 4, 2026 Order as moot. In the alternative, Scripps respectfully requests that the Court overrule Congressman Ogles's Objections and order the Warrant Materials to be re-released with the redactions removed from Dkt. No. 44-1 ¶¶ 10, 22–23, 25–26, 28, 30, 35–40, 44 (3:24-mj-04726) and to Dkt.Dkt. No. 45-1 ¶¶ 12, 24–25, 27–28, 30, 32, 38–43, 47–49 (3:24-mj-04250).

DATED: October 9, 2026

Respectfully submitted,

*/s/ Paul R. McAdoo*

Paul R. McAdoo (BPR No. 034066)
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS
6688 Nolensville Rd., Suite 108-20
Brentwood, TN 37027
Phone: 615.823.3633
Facsimile: 202.795.9310

*Counsel for Scripps Media, Inc.*

**CERTIFICATE OF SERVICE**

I certify that on October 9, 2026, the foregoing Opposition of Scripps Media, Inc. to Congressman Ogles's Objections to Magistrate Judge's September 4, 2026 Memorandum Order and Request for Removal of Certain Redactions from October 2, 2026 Release of Warrant Materials was served upon counsel for the United States and for Congressman Andy Ogles via the CM/ECF system.

DATED: October 9, 2026

*/s/ Paul R. McAdoo*
Paul R. McAdoo (BPR No. 034066)
REPORTERS COMMITTEE FOR
FREEDOM OF THE PRESS

*Counsel for Scripps Media, Inc.*